## Neiler & Warren *versus* Kelley.

| 69  | 403 |
| 153 | 166 |

| 69  | 403  |
| 208 | ⁵609 |

1. Trover will not lie for a "share of stock," but may be maintained for the certificate.

2. A declaration of a single count in trover was for seventy shares of stock of the value of $100 each, and for four bonds of $1000 each. The declaration was defective as to the stock, but not as to the bonds, and a demurrer to the *whole* declaration was properly overruled.

3. In trover the goods ought to be set out with some degree of certainty of description, but the same certainty is not required as in detinue and replevin, *damages* being recovered in trover, the *very articles* in detinue and replevin.

4. If some counts are good and others bad, and the defendant demurs to the whole declaration, the plaintiff will have judgment.

5. In general the measure of damages in trover, is the value of the goods at the time of the taking with interest; if there be circumstances of outrage jury may give more.

6. When there is a duty on a party to deliver stocks or securities at a particular time, which duty has not been fulfilled; he is liable for the highest price in the market between that time and the trial.

7. Kelley pledged to Neiler stocks as collateral for debt; the debt being due and unpaid, Neiler sold the stocks without notice to Kelley, he having neither demanded them nor tendered payment. In trover against Neiler, *Held* that the measure of damages was the market value of the stock at the time of sale with interest.

8. In trover for wrongful conversation of a pledge, a tender of the debt is not necessary, but it may be recouped by the jury from the damages.

October 16th and 17th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Erie county:* No. 76, to October and November Term 1870.

William Kelley on the 27th of March 1867, brought an action of trover against William C. Warren and Samuel E. Neiler, partners as Neiler & Warren.

The plaintiff's declaration was that he "was possessed of 70 shares of the stock of the Sunbury and Erie Railroad Company of the par value of $100 each, 43$\frac{75}{100}$ shares of the Alton, Terre Haute and St. Louis Railroad Company, of the par value of $100 each; 4 bonds of the Philadelphia and Erie Railroad Company, of $1000 each; 4 bonds made by the Philadelphia and Erie Railroad Company, guarantied by the Pennsylvania Railroad Company, of $1000 each, of great value, to wit, of the value of $16,000;" and the plaintiff having lost them, they came into the possession of the defendants by finding, &c.

The defendants demurred to the declaration and assigned as causes of demurrer:—

1. That the declaration did not show the description of the 70 shares of the Sunbury and Erie stock, whether they were issued, nor when or in how many certificates, nor what were their num-

bers, dates or amounts, nor in whose name or where issued, nor where the record of the same may be found.

2. Similar causes as to the Alton, &c., stock.

3 and 4. Similar causes as to the Philadelphia and Erie bonds; nor when or to whom they were made payable.

The court overruled the demurrer. The defendants pleaded "not guilty."

On the trial, January 28th 1870, before Vincent, A. J., the following appeared to be the facts in the case :—

Kelley the plaintiff had been a member of the firm of King, Brown & Co., contractors on the Sunbury and Erie Railroad, and had become indebted largely to Neiler & Warren, the defendants, who were bankers in Erie, they holding stocks, &c., belonging to him, as collateral security. The plaintiff moved to Sarnia, Canada, the debt being unpaid. Whilst there, on the 17th of April 1861, they made a settlement, by which it appeared that the indebtedness of the plaintiff to the defendants, with interest to March 1st 1861, was $7236; that the defendants had received a certificate of indebtedness from the Sunbury and Erie Railroad Co., for $5053.05, his share of the amount due King, Brown & Co., from the railroad company, which with interest, exchange, &c., left a balance of $2000 against him, for which he gave his note, dated March 1st 1861, and payable in two months.

At this time, the defendants held as collateral $43\frac{75}{100}$ shares of the stock of the Alton and Terre Haute Railroad Company, of the par value of $4375. Subsequently the defendants received from the Sunbury and Erie Company, in discharge of the certificate of indebtedness, 70 shares of that company's stock, of the par value of $7000, and $4000 of the bonds of that company, but taken at less than their par value, and $1143.69 in cash.

Plaintiff's indebtedness being unpaid, the defendants publicly advertised for sale, on the 7th of February 1863, at the Market House, in Erie, Penna., $7000 of the stock of the Philadelphia and Erie (late Sunbury and Erie) Railroad Company; $4000 of the bonds of that company, and $4375 of the Alton, &c., Railroad Company, "to satisfy an indebtedness for which the said bonds and stocks were assigned to the subscribers as collateral security. Neiler & Warren."

On the 31st of January 1863, the defendants enclosed a notice to the plaintiff directed to Sarnia, Canada, which, as he testified, he "received only one or two days before the sale."

In the mean time other creditors of the plaintiff had attached his property and effects in the hands of the defendants. By arrangement with the attaching creditors, the stocks and bonds were struck down at the sale at Erie to the defendants at a nominal price, with the understanding that they should be resold at Philadelphia and New York. By direction of the defendants, the

[Neiler *v.* Kelley.]

Alton, &c., Railroad Company's stock was afterwards sold at the board of brokers, New York, and the Philadelphia and Erie stock and bonds at the board of brokers at Philadelphia. These sales produced $1134.25 more than discharged the indebtedness of the plaintiff to the defendants. This balance of $1134.25, by leave of the court, was paid into court and distributed by an auditor amongst the attaching creditors, giving them a dividend of 27 per cent.

The plaintiff alleged that the sale in Erie was without his consent, and the sales at the brokers' boards were without his consent or knowledge.

The defendants' points were:—

1. If the jury believe the evidence to the effect that the stocks and bonds claimed in this case to have been, by the defendants, converted to their own use, were placed in the hands of the defendants by the plaintiff as collateral security for the payment of a debt due by plaintiff to defendants, the plaintiff cannot, under the evidence in this case, recover without showing that he has paid, or offered to pay, the debt for the payment of which the stocks and bonds were pledged.

2. If the jury believe the evidence to the effect that the defendants gave the plaintiff notice that the stocks and bonds would be sold at the Market House in Erie, on the 7th day of February 1863, for the purpose of paying the indebtedness of the plaintiff to them, in time for him to have been present, and he was not present, and the defendants then bought in the stocks, &c., there being no other bidders, with the intent to sell them in Philadelphia and New York for the benefit of the plaintiff and his attaching creditors, and did, in good faith, so sell them for the highest prices that they could then obtain, and paid into court the balance of the proceeds of such sale for the benefit of the plaintiff and his creditors, who had attached these collaterals in defendants' hands, all the balance beyond the debt due by plaintiff to them, plaintiff cannot recover.

3. Notice having been given to the plaintiff by the defendants of the intended sale at the Market House in Erie, it was sufficient, and no second notice was required, particularly as plaintiff admits that he got the notice in time to have been present at the sale.

Judge Vincent in his charge said: * * * "It is admitted by defendants that the sale in Erie was but a formal one, made to enable them to carry out the agreement made between the defendants and certain attaching creditors, to have them resold in New York and Philadelphia, but, as defendants contend, with the consent of the plaintiff's attorneys. The purchase of the securities by the defendants at the sale at Erie, did not change the character of the securities in their hands. They still remained the trustees of the plaintiff for the securities, still held them as collateral to the payment of the debt he owed them, and they had no better

[Neiler *v.* Kelley.]

right to sell at New York or Philadelphia without his authority, or without legal notice to him of such sale, than they had before the sale at Erie.    If the plaintiff, through his attorneys, consented that such sale might be made, he is bound by it.    If neither he, nor his attorneys for him, consented, he is not bound by the sales so made, and can recover in this case, the highest price said securities, so sold without his consent, bore between the time they were sold in 1863 and the bringing of this suit in 1867; and you have a right to allow them interest on the balance you may find due, after deducting from the price of such securities at the highest point, the amount of debt and interest due the defendants at the time of sale in February 1863; but we think they ought not to have interest before the time in 1864 at which you find the said securities brought the highest price. * * *

"We answer defendants' points as follows:—

"1. We answer this in the negative or affirmative, as you believe testimony as to notice or consent, as referred to in our general charge; but if you find for plaintiff, defendants are entitled to have the amount due them from plaintiff at time of sale deducted.

"3. We answer this in the negative, referring to our general charge."

The verdict was for the plaintiff for $7706.99.

The defendants took out a writ of error from the Supreme Court.

His assignments of error were:—

- 1. Overruling defendants' demurrer to plaintiff's declaration.

7. The charge as to the measure of damage, as applicable to the evidence in the case.

*J. R. Thompson*, *B. Grant* and *E. Babbitt*, for plaintiffs in error.—The bonds and certificates of stocks are not sufficiently described to enable the court or jury to select them from other bonds or certificates of stocks similar in appearance; nor could they be successfully pleaded in bar by way of a former recovery: Fox *v.* Reed, 3 Grant 81; Irwin *v.* Potter, 3 Watts 271; Gogel *v.* Jacoby, 5 S. & R. 117; 1 Chitty's Pl. 562.

*J. C. Marshall* (with whom was *F. F. Marshall*), for defendant in error.—The bonds and stock are sufficiently described in the *narr.*: 1 Chit. Pl. 378; Heddy *v.* Fuller, 1 Blachford 51; Taylor *v.* Morgan, 3 Watts 333.

The opinion of the court was delivered, October 23d 1871, by

Sharswood, J.—This was an action of trover to recover damages for the conversion of certain railroad stocks and bonds alleged to have been held by the defendants below, as a pledge or collateral security for the payment of a debt or debts owing by the plaintiff to them.

[Neiler v. Kelley.]

The first assignment of error is, that the court below erred in overruling the demurrer to the declaration. This declaration was undoubtedly, as to part of it, defective in substance, and had that part of it alone been demurred to, it must either have been amended, or judgment entered for the defendants for so much of the plaintiff's demand. It alleged the conversion of " 70 shares of the Sunbury and Erie Railway Company of the par value of $100 each; 43 and $\frac{75}{100}$ shares of the Alton, Terre Haute and St. Louis Railroad Company of the par value of $100 each." It was decided by this court in Sewall v. The Lancaster Bank, 17 S. & R. 285, that trover does not lie to recover damages for shares of bank stock, and the same principle, of course, applies to all other corporation stocks. Mr. Justice Huston said: " Though trover might lie for a certificate of stock as it does for a bond or a deed, yet it will not lie for 100 shares of bank stock any more than it would for a debt or a right of entry." A share of stock is an incorporeal intangible thing. It is a right to a certain proportion of the capital stock of a corporation—never realized except upon the dissolution and winding up of the corporation—with the right to receive, in the mean time, such profits as may be made and declared in the shape of dividends. Trover can no more be maintained for a share of the capital stock of a corporation than it can for the interest of a partner in a commercial firm. The two cases are precisely analogous. But the document or writing which is the evidence of ownership is a tangible corporeal thing— the subject not only of property but of possession—the right to which is essential in trover. Thus a bond or promissory note may be the subject of the action but not the debt of which it is the evidence. The other things mentioned in the declaration do not fall within this objection. " Four bonds made by the Philadelphia and Erie Railroad Company, of $1000 each; four bonds made by the Philadelphia and Erie Railroad Co., guarantied by the Pennsylvania Central Railroad Company, of $1000 each." One of the causes of demurrer assigned was, that neither the shares of stock nor the bonds were described with sufficient certainty—their numbers, dates, in whose names issued, and other particulars, are not given. It is true that in all actions for taking away or injuring personal property, the goods ought to be set forth with some degree of certainty—stating the kind, number and value—all of which are here given, but it is settled that less certainty is required in trover than in detinue and replevin, because in trover damages only are recovered, but in detinue and replevin the things themselves: 1 Chitty on Pl. 363. We think, therefore, that the description was sufficiently certain.

Had there been several counts in this declaration, one for the shares of stock and another for the bonds, it would have been the duty of the court—upon a demurrer to the former count—to have

[Neiler *v.* Kelley.]

.entered judgment for the defendants, if no amendment had been moved. A demurrer is either to the whole or part of a declaration, and if there be several counts, some good and others bad, if the defendant demurs to the whole declaration the court must give judgment for the plaintiff, and this rule applies equally to one count, part of which is sufficient and the residue not, when the matters are divisible in their nature. Thus, if a plaintiff declares for taking his money and also for certain goods, without showing that the goods were his property, the count will be good as to the money, and if the defendant demurs generally to the whole, the plaintiff will have judgment: 1 Chitty on Pl. 643. The court below, therefore, committed no error in overruling the demurrer.

The 2d, 3d, 4th, 5th and 6th assignments of error are clearly not *secundum regulam,* Rule VII., 6 Harris 578; Burkholder *v.* Stahl, 8 P. F. Smith 371; and are therefore to be holden for none. We may say in regard to the fifth and sixth assignments, that, as no copy of the letter of Kelley, dated January 17th 1863, to which a reference is made in the charge, is printed in either of the paper-books, and which seems to be very material, no opinion could safely be hazarded upon the question attempted to be raised by these specifications.

The 7th assignment of error, however, is substantially in compliance with the rule. It complains of the charge of the learned judge in regard to the measure of damages, as applicable to the evidence in the case, " that it was the highest price the securities bore between their sale and the bringing of this suit." In this we think there was error.

The general rule as to the measure of damages in an action of trover, undoubtedly is well settled to be the value of the goods at the time of the conversion, to which may be added interest up to the time of the trial, unless there were some circumstances of outrage in the case, when the jury may give more: Jacoby *v.* Laussatt, 6 S. & R. 300; Dennis *v.* Barber, Id. 420; Berry *v.* Vantries, 12 S. & R. 89; Taylor *v.* Morgan, 3 *Watts* 333; Harger *v.* McMains, 4 Watts 418. This rule may be considered to have been, to some extent, modified as to stocks, railroad bonds and other securities of a similar nature, by the cases of The Bank of Montgomery *v.* Reese, 2 Casey 143; Reitenbaugh *v.* Ludwick, 7 Id. 131; Persch *v.* Quiggle, 7 P. F. Smith 247, and perhaps others. The rule, however, is not changed but only modified to this extent, that wherever there is a duty or obligation devolved upon a defendant to deliver such stocks or securities at a particular time, and that duty or obligation has not been fulfilled, then the plaintiff is entitled to recover the highest price in the market between that time and the time of the trial. The grounds of this exception are that such securities are limited in quantity—are not

[Neiler *v.* Kelley.]

always to be obtained at any price, and are of a very fluctuating value.    These are supposed to constitute sufficient reasons for the distinction.    But it is plain that it has no application to the evidence in this case.    The defendants below were at no time under any obligation to deliver these stocks and bonds specifically to the plaintiff.    He never had put himself in a position to demand them before the bringing the suit or up to the time of trial, by tendering or offering to pay the amount of his indebtedness to the defendants.    Had the action been detinue or replevin, he must have failed entirely.    We agree that in trover, where there has been actual conversion by a wrongful sale of the pledge, there is no necessity for a tender of the debt, but its amount may be recouped by the jury from the damages—the value at the time of conversion—but where a plaintiff seeks to fasten a responsibility for more than the usual measure of damages, he must also fasten upon the defendants the duty or obligation to deliver specifically the stock or securities at some particular time, and their refusal to fulfil that duty. ` Non constat` that upon a demand and tender the defendants would not have been able to deliver to the plaintiff similar stocks and securities, as according to Gilpin *v.* Howell, 5 Barr 41, they might well do.    There was no pretence in this case of any outrage which should be allowed to inflame the damages. The defendants acted in the sale of the stocks and bonds, in the belief that they had a right to sell them, and with perfect fairness and good faith to all interested.    There was nothing, therefore, in the evidence in the case to take it out of the ordinary rule that the measure of damages was the market value of the stocks and securities at the time of the sale or conversion—with interest up the time of the trial—from which the jury should deduct the amount of the plaintiff's indebtedness to the defendants, and such ought to have been the instruction to the jury.

Judgment reversed, and *venire facias de novo* awarded.