CITY OF WORCESTER *vs.* BOARD OF APPEAL IN TAX MATTERS.

Worcester. September 28, 1903. — January 5, 1904.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Tax. Corporation. Words,* " Owners ", " Person."

Shares of a domestic manufacturing corporation purchased by the corporation itself and held for its benefit by a trustee residing in a city of this Commonwealth, assuming that the shares are to be treated as outstanding, are not taxable either to the corporation or the trustee, and the city in which the trustee resides is not entitled under R. L. c. 14, § 61, to be paid by the Commonwealth any proportion of the corporate franchise tax collected from the corporation as corresponding to the amount of the stock so held.

PETITION, filed April 24, 1903, by the city of Worcester for a writ of certiorari addressed to the board of appeal in tax matters, to quash proceedings under R. L. c. 14, § 65, to determine the proportion alleged to be due to the petitioner under R. L. c. 14, § 61, from the corporate franchise tax collected from the Crompton and Knowles Loom Works, a manufacturing corporation established under the laws of this Commonwealth, upon twelve thousand four hundred and seventy shares of the capital stock of that corporation standing in the name of C. H. Hutchins, a resident of Worcester, as trustee for the corporation.

The case came on to be heard before *Braley,* J., who, at the request of the parties, reserved it for determination by the full court upon the question of law, whether the respondents, in view of the facts set forth in their record and the extension thereof in

their return, " were required by law to decide that the distribution value of the twelve thousand four hundred and seventy shares of stock," named in the petition, or any part thereof, must be paid to the petitioner. If the question was answered in the affirmative, the writ of certiorari was to issue; if in the negative, the petition was to be dismissed.

*A. P. Rugg*, (*E. I. Morgan* with him,) for the petitioner.

*F. H. Nash*, Assistant Attorney General, for the respondents.

HAMMOND, J. A domestic manufacturing corporation, having its home office and sole place of business in the city of Worcester, had purchased certain shares of its own stock as an investment, and they were held by a resident of that city as trustee for the sole benefit of the corporation. The only question is whether under R. L. c. 14, § 61, there should be credited and paid to the city the tax upon these shares.

The petitioner contends that such a corporation, having its home office and sole place of business in the city, is a person who resides in that city within the meaning of those words as used respectively in R. L. c. 14, § 61, and c. 12, § 23, cl. 5, and that consequently the tax upon these shares should be credited to the city.

Without doubt the language of the statute is broad enough to cover a corporation, but in view of the history of the legislation upon the subject of the taxation of the personal property of corporations and the decisions of this court as to the interpretation of the statutes, we are of opinion that the position of the petitioner is unsound.

In the early tax acts no mention is made of corporate stock by name. Bank shares are first mentioned in 1793, (St. 1793, c. 9, A,) " shares or property held in any incorporate bridges or turnpike roads " in 1801, (St. 1800, c. 77, § 2,) and "shares in any other incorporated company possessing taxable property " in 1805, (St. 1804, c. 144, § 2.) Shares in insurance companies do not seem to have been mentioned specifically until the act of 1822, (St. 1821, c. 107, § 2.) In all cases the shares were to be assessed " according to the just value thereof " to the individual shareholders in the places where they respectively resided. There was no express provision for assessing the property of a corporation in any other way. An idea seems to have prevailed,

however, to some extent at least, that within the meaning of the general provisions of the tax acts providing that real estate and personal property were to be assessed to the owner thereof, a corporation was an owner; and hence arose in some towns the practice of assessing a corporation for both its real and personal estate. When the shareholders were assessed the full value of their shares and the corporation was also assessed for its real and personal estate, there was a plain case of double taxation as to a portion at least of the corporate property both real and personal.

Finally it occurred to the Salem Iron Factory, a domestic corporation, to test the validity of the tax assessed upon it. For several years between 1796 and 1810, the assessors of Danvers had assessed a tax upon this corporation for its real estate, " consisting of the factory and the land under and adjoining the same," situated in that town ; and also for the " personal estate, used in and about the factory." The corporation paid the taxes, and brought an action to recover back. It was argued for the plaintiff that the property of the corporation could not be lawfully taxed twice, and, since the stockholders were taxed for the full value of the shares, the whole tax assessed upon the corporation, as well that part upon the real as that part upon the personal estate, was invalid. The defendant, not denying that if the tax was valid there was double taxation, maintained that this was a matter to be corrected by the Legislature and not by the courts. The court said there was no doubt that the " property itself was a subject of taxation", and that it depended " on the construction of the several tax acts, whether the taxes should be assessed on the plaintiffs as the legal owners of the specific lands and goods, or on the several stockholders and members of the corporation, as the persons beneficially interested in the property "; and then stated that " the latter course seems best to comport with the general scope and object of the successive statutes for the valuation and taxation of estates within the Commonwealth." The shares being taxable to the individual shareholders in the towns where they respectively reside, the court proceeds to say that " it appears unjust, and contrary to the spirit of our laws, that the corporation should also be taxed for the same property", and hence the tax upon personal property was illegal.

But a distinction was made between the tax on personal and that on real estate. Under the law real estate owned by a corporation was included in the valuation of a town upon which the State tax was based, but the corporation was not "included among the inhabitants of that town liable to taxation." The court, remarking that "it would therefore be unjust, if real estate, which is included in estimating the amount of taxes chargeable on the inhabitants of a town, by being transferred to another owner, should be exempted from contributing to the discharge of such taxes," held on that ground that the tax upon the real estate was valid. The court seemed to feel that this decision as to real estate might result in double taxation, but remarked that "if this result should appear to be injurious to the plaintiffs, a different decision would be not less so to the defendants; and the injustice, if any exists, can be remedied only by the Legislature." *Salem Iron Factory* v. *Danvers*, 10 Mass. 514.

We have reviewed this case at some length because it shows the ground upon which a distinction was made for purposes of taxation between the real and personal estate of a corporation, and because it also shows that this distinction was not expressly stated in the statute, but is the result of a judicial interpretation of its general provisions. It is to be noted in passing, that the distinction is based in no respect upon any supposed difficulty in ascertaining for purposes of taxation of personal estate the residence of a corporation. Although this decision was made in 1813, no change material to this question appears in the language of the statutes until St. 1832, c. 158. By this statute it was provided that "all the machinery employed in any branch of manufactory, and belonging to any corporation . . . or persons of this or any other State" should be assessed where such machinery was situated, and that in assessing the shares of a manufacturing corporation there should "first be deducted from the value thereof the value of the machinery and real estate belonging to such corporation otherwise specifically taxed." Here first appears in the statutes the idea of subtracting for purposes of assessment the value of the machinery and real estate of a corporation from the value of the shares held by the stockholders. These provisions were re-enacted in Rev. Sts. c. 7, § 10, cl. 2, and Gen. Sts. c. 11, § 12, cl. 2; and they continued to be the law until the change hereinafter named.

In *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181, the principle enunciated in *Salem Iron Factory* v. *Danvers* as to the taxation of the personal property of a corporation was affirmed. And it was accordingly held that the provision of St. 1839, c. 139, that "all stocks in trade, including stock employed in the business of manufacturing, . . . in towns within the State, other than where the owners reside, shall be taxed in those towns, if the owners hire or occupy manufactories, stores, shops or wharves therein," did not apply to a manufacturing corporation. A still more striking illustration of the application of the same principle is shown in *Middlesex Railroad* v. *Charlestown*, 8 Allen, 330. In that case it was held that a corporation was not an owner within the meaning of Gen. Sts. c. 11, § 12, cl. 3, which provides that "horses employed in stages or other vehicles for the transportation of passengers for hire, shall be assessed to the owners in the places where they are kept." This court, speaking by Hoar, J., said: The "stockholders are liable to taxation upon their shares in the towns where they dwell. The value of the personal property owned by the corporation is included as a subject of taxation in the value of the shares."

In a word, the general provisions of law for the taxation of personal property were not applicable to corporations. Except as to machinery, which is specially mentioned, the personal property was reached through the shareholders. See in addition to the cases above named, *Dunnell Manuf. Co.* v. *Pawtucket*, 7 Gray, 277; *Worcester Ins. Co.* v. *Worcester*, 7 Cush. 600; *Worcester County Institution for Savings* v. *Worcester*, 10 Cush. 128, 129; *Murray* v. *Berkshire Ins. Co.* 104 Mass. 586, 589. And this interpretation, so far at least as respects domestic corporations, was adopted not upon the ground that it might be difficult to ascertain the residence of a corporation for purposes of taxation (although this consideration is sometimes alluded to), but plainly and simply upon the ground that the opposite interpretation would result in a form of double taxation.

Upon the facts appearing in this case the shares in question became by the purchase in substance the personal property of the corporation, and if the corporation had taken the certificate in its own name it is plain that under the former system of taxation the general provisions of the statute that personal property

should be assessed to the owner would not have been applicable. The value of these shares would have been reached for taxation through the increased valuation of the shares still outstanding in the hands of the individual stockholders.

Inasmuch, however, as the certificate was not held by the corporation but by a trustee for its benefit, it may be urged by the petitioner that under the former system the stock would have been assessable to such trustee under Gen. Sts. c. 11, § 12, cl. 5 (now R. L. c. 12, § 23, cl. 5). But the same reasons which lead to the conclusion that the first and third clauses of that section are not applicable to corporations like this, lead also to a similar conclusion as to the fifth clause. As in the first and third clauses the word " owners " does not include corporations, so for the same reasons in the fifth the word " person " does not include them. Hence, even if it be assumed in favor of the petitioner that the shares in question had not been substantially withdrawn but were still outstanding, it seems plain that under the former system of taxation no tax could have been legally assessed on account of this stock, either upon the corporation under the first clause or upon the trustee under the fifth.

But for obvious reasons this method of reaching for taxation the property of corporations, especially that part represented by shares in the hands of non-residents, was defective ; and by Sts. 1864, c. 208, and 1865, c. 283, a change was made so far as respects corporations like the one in question. An excise tax was imposed upon the corporate franchise, and the stockholders were relieved from taxation upon their shares, *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, *Manufacturers' Ins. Co.* v. *Loud,* 99 Mass. 146, and this system has ever since been continued. Pub. Sts. c. 13, §§ 38–40. R. L. c. 14, § 61. This excise tax is based upon a certain percentage of the actual cash value of the stock less the value of the real estate and machinery subject to local taxation, (R. L. c. 12, § 23, cl. 2,) and it is paid by the corporation to the State. In R. L. c. 14, § 61, is set forth the system for the distribution of this tax among the cities and towns. The clause upon which the petitioner relies is as follows: " If stock is held by . . . trustees, the proportion of tax corresponding to the amount of stock so held shall be credited and paid to the cities and towns where the stock would have been

taxed under the provisions of clauses . . . five . . . of section twenty-three. . . ." Without reciting in detail the provisions of the method of distribution it is evident that its purpose was to give to towns a share of this excise tax corresponding to that which under the former system they had to the tax upon the personal property of these corporations, or in other words that the share of each town in the excise tax is measured by the number of shares which under the former system would have been taxable in that town. Such seems to be the natural meaning of the language used. Under that system, as we have seen, no part of the stock in question would have been taxable as such in Worcester, and therefore it cannot be considered in ascertaining the sum to be paid to that city on account of the excise tax. The word " person " in clause 5 can have no broader signification with respect to the distribution of the excise tax under the present law than it had with respect to assessment under the former. For cases somewhat instructive upon the question here involved, see in addition to those before cited, *Murray* v. *Berkshire Ins. Co.* 104 Mass. 586 ; *Boston Investment Co.* v. *Boston,* 158 Mass. 461.

*Petition dismissed.*