## Commonwealth v. Ajax Metal Company.

*Corporations—Capital stock—Treasury stock—Taxation.*

1. Capital stock, in the strict sense of the term, is the fund of money or other property contributed by stockholders, fixed as the basis for conducting the business of a corporation.

2. A share of stock is an incorporeal intangible thing. It is the right to a certain proportion of the capital stock of a corporation.

3. A certificate is the tangible evidence of the ownership of shares of stock. It is not necessary to the existence of capital stock that a certificate should be issued.

4. Treasury stock is stock that has been issued for value and later has found its way back into the treasury of the corporation.

5. Treasury stock of a manufacturing corporation is not taxable under section 21 of the Act of June 1, 1889, P. L. 420, as amended by section 1 of the Act of July 22, 1913, P. L. 903.

Appeal from settlement for tax on capital stock. C. P. Dauphin Co., Commonwealth Docket, 1924, No. 14.

*John Robert Jones*, Deputy Attorney-General, for plaintiff.

*Olmsted, Snyder & Miller*, for defendant.

HARGEST, P. J., Dec. 16, 1925.—This case arises upon an appeal from the settlement made by the Auditor General and approved by the State Treasurer Sept. 12, 1923, for $1080 tax upon $216,000 of the capital stock of the defend-

ant company for the year 1922. A stipulation has been filed to submit to the decision of the court without the intervention of a jury, pursuant to the Act approved April 22, 1874, P. L. 109.

An agreed statement of facts has also been filed, from which it appears that the defendant company has an authorized capital stock of $150,000, divided into 3000 shares of a par value of $50 each.

During the year 1922 the company purchased 480 shares of its outstanding stock for $450 per share, amounting to $216,000. The certificates representing these shares were delivered by the former owner thereof and thereupon marked canceled and pasted to the stub of the stock certificate book from which they had been originally detached. The stock was not reissued nor voted, nor were any dividends paid thereon. It is not the intention of the company to reissue the stock. In the balance sheet submitted with the 1922 capital stock report the company returned "treasury stock at cost $216,000." This is made the basis of the taxation.

### Discussion.

The statute under which the capital stock tax is now imposed is section 1 of the Act of July 22, 1913, P. L. 903, which is the last amendment to section 21 of the Act of June 1, 1889, P. L. 420. This act imposes "a tax at the rate of 5 mills upon each dollar of the actual value of its whole capital stock of all kinds, including common, special and preferred, as ascertained in the manner prescribed in said 20th section." The 20th section of the Act of 1889, which is last amended by the Act of July 15, 1919, P. L. 948, provides for the report to the Auditor General upon which the tax is to be assessed. The defendant is a manufacturing corporation and is exempt upon only so much of its capital stock as is "invested in and actually and exclusively employed in manufacturing:" Com. v. Filbert Paving and Construction Co., 229 Pa. 231; Act of July 22, 1913, P. L. 903.

Is the capital stock purchased and returned to the company, certificates for which have been canceled, taxable within the purview of the taxing statute?

The Commonwealth contends that by this purchase the company acquired the stock as treasury stock, has the full right thereto, the property and value therein, to the amount paid for it, and that the cancellation of the certificates and the intention not to reissue neither affects its value as property of the company nor its taxability. On the other hand, the company contends that the capital stock is worth nothing in its present inchoate condition for the purpose of taxation; that the $216,000 paid for it has gone out of the treasury and that the company has no property which is taxable, but only the right to subsequently secure property in the shape of money, to the extent of its value, by reissuing the stock.

To properly determine this question well-settled principles must be kept in mind. One of these principles is well stated in Com. v. Penna. W. & P. Co., 271 Pa. 456, 458: "The power to impose a tax is given by statute, and an act relating thereto embraces such subjects only as are plainly within its terms. In other words, 'a tax law cannot be extended by construction to things not described as the subject of taxation:' Boyd v. Hood, 57 Pa. 98. To entitle the Commonwealth to the tax imposed, the words of the statute must be clear and unambiguous."

Another principle is that the capital stock is not "a franchise or license tax, but is in its nature a tax upon the property and assets of corporations:"

Com. v. Standard Oil Co., 101 Pa. 119, 120; Com. v. N. Y., Pa. & O. R. R. Co., 188 Pa. 169, 183; Com. v. Curtis Pub. Co., 237 Pa. 333, 335; Dupuy v. Johns, 261 Pa. 40, 45; Com. v. Shenango Furnace Co., 268 Pa. 283.

It may be well to consider also the distinction between capital stock, shares of stock and certificates of stock. Capital stock, in the strict and proper sense of that term, is the fund of money or other property contributed by the stockholders fixed as the basis for conducting the business of the corporation: 14 Corpus Juris, "Corporations," § 499.

In Fox's Appeal, 112 Pa. 337, 354, it is said: "The capital stock is nothing; a myth; a mere name, excepting in so far as it is represented by investments made with the money paid into the treasury of the corporation on account of such capital stock. Hence it is that the courts have long since declared that a tax upon the capital stock of a corporation is a tax upon the assets and property of such corporation."

A "share" of stock is an incorporeal, intangible thing. It is the right to a certain proportion of the capital stock of a corporation: Neiler & Warren v. Kelley, 69 Pa. 403.

The "certificate" is the tangible evidence of the ownership of the shares. It is not necessary to the existence of capital stock that a certificate should be issued.

In 1 Cook on Corporations (8th ed.), § 13, pages 77, 81, it is said: "A certificate of stock is from one point of view a mere muniment of title like a title deed. It is not the stock itself, but evidence of the ownership of the stock. . . . It is not essential to the existence of the corporation that certificates of stock be issued. Without a certificate the stockholder has a complete power to transfer his stock, to receive dividends and to vote, and he is individually liable as a stockholder."

When the defendant company purchased its own stock and merely canceled the certificates, without reducing the capital stock by action of the stockholders in the method pointed out by the Act of June 8, 1893, P. L. 351, as amended by the Act of April 22, 1905, P. L. 264, in effect it made the stock so purchased "treasury stock."

"Treasury stock is ordinary stock belonging to and subject to sale by the corporation, . . . and, as a rule, it may be sold by the corporation for such price and on such terms and to such persons as it may deem proper. . . . It has been held that where stock of a corporation is purchased from the stockholder with company funds, it becomes treasury stock, and an accounting between the remaining stockholders should proceed on the basis of their respective holdings of the stock yet outstanding:" 14 Corpus Juris, "Corporations," § 554.

In 1 Cook on Corporations (8th ed.), § 12, page 77, it is said: " 'Treasury stock' is stock that has been issued for value and later has found its way back into the treasury of the company itself."

The question, therefore, is whether, under the statute imposing capital stock tax in Pennsylvania, "treasury stock" is taxable.

In 5 Fletcher's Cyc. Corp., § 3522, it is said concerning the acquisition by a corporation of its own stock: "It holds such stock as it holds other assets, and may lawfully sell the same at its market price, even as against dissenting stockholders and subsequent creditors."

In 14 Corpus Juris, "Corporations," § 553, it is said: "Stock which has once been legally issued by a corporation and which has been reacquired by it by purchase or donation cannot be regarded as unissued stock in the proper sense. It belongs to the corporation like other assets, and, subject to charter

or statutory restrictions, may be disposed of by sale or otherwise, as it may see fit, for any legitimate corporate purpose, and reissued."

The Commonwealth contends that, as stated in these authorities, the defendant holds its own capital stock "like its other assets," and is, therefore, taxable, since the stock is not used or employed in manufacturing.

In order to determine the soundness of this contention, it is necessary to analyze just what the defendant had when it repurchased its own stock. It did not have the money which represented its value, because it had paid that money out to the seller. In Callery's Appeal, 272 Pa. 255, 264, Mr. Justice Kephart, referring to the purchase of stock by a corporation, said: "In purchasing, the capital is transferred to the selling company."

Assuming that the stock was intrinsically worth just what the defendant paid for it, if there had been a liquidation of the company, the remaining shareholders would have had no more after the purchase than they had before. Before the purchase, if there had been a liquidation there would have been 480 more shares to participate, but there would also have been $216,000 more to distribute. Immediately after the purchase there would have been fewer shares and less money, and each share, if worth $450 liquidating value before the purchase, would have been worth the same afterwards. It is true the company had the treasury stock, but the treasury stock was dormant and could only have been revived by selling and placing the proceeds in the treasury through some corporate action, either by the stockholders or directors. Such stock is not liable to assessment and does not participate in dividends: Tulare Irr. Dist. v. Kaweah Canal and Irr., etc., Co. (Cal.), 44 Pac. Repr. 662. Treasury stock cannot be taken in execution and sold, nor is it an asset in the event of bankruptcy. This treasury stock was an inchoate, intangible right. In other words, the company had the right to reissue the stock and sell it for some tangible property. Did it have more than a right to issue the stock? If it had nothing more than such right, would that subject the corporation to tax on the amount which it would realize for the stock if reissued? If all it had was the right to issue the stock, it follows that the mere right is not taxable, because the capital stock tax in Pennsylvania is not imposed upon the right to issue stock. The bonus is imposed for that right, and in this instance the bonus on these 480 shares has been paid. A tax imposed for right to have stock is in its nature a franchise tax. But the capital stock tax is not a franchise tax: Fox's Appeal, 112 Pa. 337. It is true that the franchises of a corporation, which are intangible, may be valued in ascertaining the value of its capital stock: Com. v. Fall Brook Coal Co., 156 Pa. 488; Com. v. N. Y., P. & O. R. R. Co., 188 Pa. 169, 182, 192. In this case the franchise has not otherwise been taxed, for the very good reason that the company is a manufacturing corporation and its franchise is exempt from taxation. In the instant case, if this treasury stock were taxed, there would be the anomalous situation of a manufacturing corporation, which is generally exempt from taxation upon its capital stock, having a part of its capital stock which does not represent tangible property subject to tax. Usually, where a tax is imposed upon part of the property or assets of a manufacturing corporation, it is because there is something tangible, like real estate, a bank account, or stock or bonds of other corporations owned by the manufacturing company, which are not used or necessary for manufacturing purposes. In this case the taxation could only be upon the theory that the treasury stock was property not employed in manufacturing and worth what was paid for it. But the money, which is the property that it represents, has gone out of the treasury and the seller has the

Commonwealth v. Ajax Metal Company.

money. To sustain the proposition that the treasury stock of a manufacturing corporation, though a part of the franchise, must, nevertheless, be considered as property not needed for the purpose of manufacturing, is building fiction upon fiction and is a refinement upon a theory which does not satisfy reason.

We conclude that this treasury stock is not taxable because it is not "property or assets" within the meaning of the taxing statute.

The case of Tulare Irr. Dist. v. Kaweah Canal and Irr., etc., Co. (Cal.), 44 Pac. Repr. 662, is much in point. In that case the corporation purchased part of its own stock and subsequently sold all of its property and "all of its franchises, rights and privileges . . . except its corporate franchise to exercise and transact business as a corporation in accordance with its articles of incorporation." It was held that the stock of the corporation which had been repurchased by it did not pass to the purchaser of the property, and that while the stock was in the treasury it was dormant, and "so long as it remains in the treasury it represents no part of or interest in the property of the corporation."

A somewhat extended search, both by counsel and ourselves, has revealed only three cases which, in any event, might be considered as directly in point. They are: Tulare Irr. Dist. v. Kaweah Canal and Irr., etc., Co. (Cal.), 44 Pac. Repr. 662; City of Worcester v. Board of Appeals, 184 Mass. 460, 69 N. E. Repr. 330, and Knickerbocker Importation Co. v. State Board of Assessors, 74 N. J. L. 583, 65 Atl. Repr. 913.

While the case of City of Worcester v. Board of Appeals, 184 Mass. 460, 69 N. E. Repr. 330, is digested so as to appear that it holds "that shares purchased by a corporation are non-taxable while they are held by the corporation or by a trustee for the corporation," the decision of the court really is that, under the law of Massachusetts providing for distribution among cities and towns of the excise tax upon corporate franchises apportioned according to the number of shares which, under a former system, would have been taxable in that town, the corporation's own stock held by a trustee resident in the town for the corporation is not distributable to the town. There is no definite discussion of whether such stock is, in any event, taxable.

In the case of Knickerbocker Importation Co. v. State Board of Assessors, 74 N. J. L. 583, 65 Atl. Repr. 913, it is definitely held that "stock once issued is and remains outstanding within the purview of the franchise tax act, although owned by the corporation issuing the same, until retired and canceled as provided by statute for the reduction of capital stock." It is argued by the Commonwealth that, under the principles applied in the case just cited, the stock in the instant case must be considered as outstanding, and, therefore, is taxable at its market value. Under the Franchise Tax Act of New Jersey, a corporation is taxable with respect to the amount of capital stock issued and outstanding, without regard to the purpose for which the capital stock was issued or whether it was issued for value or not. It will be at once apparent that the question involved in the New Jersey case is altogether different from that in the case before us. The question here is not whether the stock was outstanding, but whether it represents taxable property. In the New Jersey case it was held that it was outstanding because it had not been retired and canceled as provided by the statute for the reduction of the capital stock. We are unable to see that the reasoning of the New Jersey case leads to the conclusion that the dormant treasury stock of the defendant in this case is taxable as corporate property or assets not employed in manufacturing.

For these reasons, we are of opinion that the Commonwealth is not entitled to recover.

Now, Dec. 16, 1925, judgment is hereby directed to be entered in favor of the Ajax Metal Company and against the Commonwealth, unless exceptions be filed within the time limited by law.

From George R. Barnett, Harrisburg, Pa.