SOHMER, State Comptroller, v. HERDEN et al.  (No. 308/27.)

(Supreme Court, Appellate Division, Third Department.  January 6, 1915.)

TAXATION (§ 103*)—STOCK TRANSFERS—"STOCK CERTIFICATE."

Where an existing corporation, to increase its capital, arranged to is-sue additional stock to be paid for in installments, the certificates not to be issued until the last installment was paid, and the subscribers to have no right to vote or participate in the dividends, a certificate of subscrip-tion was not equivalent to a "stock certificate," and transfers of such certificates were not taxable, under Tax Law (Consol. Laws, c. 60) § 270, as amended by Laws 1911, c. 352, imposing taxes upon stock transfers, for until the new stock was issued it was not in existence and the capital of the corporation had not been increased.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 202; Dec. Dig. § 103.*

For other definitions, see Words and Phrases, First and Second Series, Certificate of Stock.]

Woodward and Lyon, JJ., dissenting.

Submitted controversy between William Sohmer, as Comptroller of the State of New York, and Robert Y. Herden and others.  Judgment for defendants.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

James A. Parsons, Atty. Gen. (Edward J. Mone, Deputy Atty. Gen., of counsel), for plaintiff.

Shearman & Sterling, of New York City (John A. Garver and Har-ry W. Forbes, both of New York City, on the brief), for defendants.

JOHN M. KELLOGG, J.  In October, 1912, the Canadian Pacific Railway Company authorized an increase of its capital stock from $200,000,000 to $260,000,000, the additional $60,000,000 to be issued in such manner and upon such terms·as the directors might prescribe. On the same day the directors prescribed the terms upon which such issue might be made.  Each stockholder was entitled to subscribe for his proportionate share of the new stock at $175 per share, the sub-scription price to be paid in five equal installments of $35 each, namely,. on or before the 13th of February, the 14th of April, the 16th of June, the 18th of August, and the 20th of October, 1913.  Upon pay-ment of all the installments the subscriber, on December 13, 1913, was entitled to receive the certificate for the stock so subscribed and paid for, and to participate with the stockholders in the dividends accruing for the quarter ending December 13, 1913, payable April, 1914.  Until

the issuing of the stock certificate no subscriber should have any right to vote as a stockholder or participate in the dividends. He was, however, allowed 7 per cent. interest upon the moneys actually paid on his subscription. Upon the payment of the first installment each subscriber was given "a certificate of subscription" transferable on the books of the company. The certificate provided that a failure to pay any installment by the date at which it is due renders previous payments liable to forfeiture. Various subscribers, after the first payment, sold and transferred their certificates of subscription, and the company transferred the same upon its books.

It is contended by the plaintiff that under section 270 of the Tax Law the transfer of such certificates was taxable on the theory that they were stock, or represented stock. The tax, if any, upon such transfers prior to July 1, 1913, amounted to $413.84. The tax, if any, upon the transfers made after July 1, 1913, amounted to $608.30. It is stated that, if any tax is due on such transfers, it is due and payable by the defendants. The defendants' claim that no tax is due on account of such transfers.

Where a corporation is forming, the stockholders named in the certificate, or the original subscribers forming the corporation, are stockholders under the law, although the stock is not paid in full and the certificates of stock have not been issued. Otherwise, there would be no corporation, as it is an association of stockholders. This corporation was actually formed, and had authorized the issue of the stock, and the subscriber for the new stock only acquired such rights as the agreement of subscription gave them. By subscribing and paying the first installment they were not entitled to vote as stockholders, to receive dividends, or to act as officers of the company. They were simply parties to an agreement which in time might enable them to become stockholders. If they failed to pay the installments as they came due, the company might forfeit their right to the stock. The capital stock of the company actually remained $200,000,000 until the new stock was paid for and issued, or entitled to be issued.

In Boston & Albany R. R. Co. v. Commonwealth; 157 Mass. 68, 31 N. E. 696, the company authorized an increase of its stock to be paid for in installments, 10 per cent. on January 5, 1891, and 90 per cent. on January 5, 1892. Subscription certificates were issued and apparently dealt in substantially as in the case at bar. Some of the certificates had been paid in full. It was held that, under a statute taxing the value of the stock of the company on May 1, 1891, the new stock, even the part of it which was fully paid, should not be included, as the stock did not come into existence until January 5, 1892.

The case seems directly in point, and apparently recognizes the correct rule. Until the subscriber has fully performed his part, and the day for the issue of the new stock arrives, he is not a stockholder, but may become one, if he complies with the terms of the subscription. The essential rights of the stockholder, the participation in dividends, the right to vote or hold office in the company, are denied him. The income which he receives on his investment is not by way of dividends, depending upon the earnings of the company, but is a fixed sum as interest upon the money which he has paid, without regard to whether

the business is profitable or unprofitable during the time. In our judgment, the transfer of the certificate of subscription was not a transfer of stock within the meaning of section 270 of the Tax Law.

Judgment should therefore enter in favor of the defendants, with costs and disbursements to be taxed.

SMITH, P. J., and HOWARD, J., concur.

WOODWARD, J. I dissent. Accepting the statement of facts as made by Mr. Justice KELLOGG, it seems to me that the defendants are brought squarely within the letter and spirit of the statute. Section 270 of the Tax Law provides that:

There "is hereby imposed and there shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to sell, or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock in any domestic or foreign association, company or corporation, made after the first day of June, nineteen hundred and five, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, *or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final,* and whether investing the holder with the beneficial interest in or legal title to said stock or merely with the possession or use thereof for any purpose, or to secure the future payment of money, *or the future transfer of any stock,* on each hundred dollars of face value or fraction thereof, two cents," etc.

It is difficult to understand how language could be more comprehensive for the purpose of reaching transfers of stock. This is a revenue measure, designed to give the state an income from the privilege of transferring stocks of corporations within this state. The Canadian Pacific Railway Company, in increasing its capital stock by $60,000,000, was obliged to give its stockholders the privilege of purchasing this stock, and this was done by permitting each stockholder to purchase his portion of the stock at $175 per share, the payments being deferred. There were some limitations on the holders of these new shares. They were not to have all of the privileges of stockholders until the final payments, but in the meantime they were given intermediate certificates, which entitled them to receive 7 per cent. interest upon the portion paid in, together with the right of making the final payments and receiving the final certificates. These intermediate certificates were stock certificates; they were transferable, and gave to the holder the rights of a stockholder upon the performance of the conditions. The fact that they did not immediately invest the holder with all of the privileges of the old certificates is of no importance; each of these certificates was a "paper or agreement or memorandum or other evidence of sale or transfer" intermediate to the final certificates, and it was designed to secure the "future transfer of any stock" which might have been secured to the holder thereof.

These intermediate certificates are not uncommon; they are very generally used in reorganizations and consolidations, pending the final arrangements, and it was clearly the purpose of the statute to provide for these the same as though they were final certificates. These intermediate certificates, while temporarily denying some of the privileges of

stockholders, must ripen into full privileges upon the performance of the conditions, and if these were permitted to be transferred without the payment of the tax, a wide field for fraud upon·the revenues would be opened up. The general investor pays little attention to his privi-, leges as a stockholder; he is interested in the income, and he would be entitled to this upon his intermediate certificate as completely as though he had the formal and final certificates, and it ought not to be held that the transfer of these valuable rights can be made free of taxation, while certificates of stock, of less prosperous corporations, are taxed for the same privilege.

In the case of Boston & Albany Railroad Co. v. Commonwealth, 157 Mass. 68, 31 N. E. 696, the question involved was whether an increase in the capital stock of the railroad company, which was not paid in, and which was not due to be paid in for some time after the assessment, could be made the basis of an assessment upon the property of the railroad, and it was held that it could not. But this was a question of a property tax, and obviously it was improper to charge the railroad with the ownership of property which was not in the possession of the corporation, and would not be until the following year. Here the tax is laid upon the privilege of transferring the stock or certificates, based, not upon the value, but upon each $100 of face value, whether the real value was more or less. It is an excise tax, and the case is fairly within the letter of the statute, which seeks to compel payment for the privileges afforded by the state in the transaction of business. Nicol v. Ames, 173 U. S. 509, 19 Sup. Ct. 522, 43 L. Ed. 786.

Judgment should be entered in favor of the plaintiff, with costs and disbursements to be taxed.

LYON, J., concurs.