## COMMONWEALTH *vs.* CARY IMPROVEMENT COMPANY.

The ascertainment of the excess of the market value of the capital stock of a corporation over the value of its real estate and machinery, by the tax commissioners, under the St. of 1864, *c.* 208, § 5, is not subject to revision by any other tribunal.

The excise imposed by the St. of 1864, *c.* 208, § 5, on the franchise of a corporation, computed on the market value of its capital stock, is not unreasonable in the sense of the Constitution, part 2, *c.* 1, § 1, art. 4, because such value is computed by the tax commissioners by the price fixed in the market by sales of the shares which, though actual, are speculative, and largely exceeds the value of all the property owned by the corporation.

CONTRACT for the amount of a tax assessed by the Commonwealth under the St. of 1864, *c.* 208, against a land company chartered by the St. of 1852, *c.* 59. The case was reserved for determination by the full court on facts agreed as follows ; such judgment to be entered thereon as the law might require.

The corporation owned certain lands in Chelsea; and also personal property valued at about eighty thousand dollars. Its capital stock was divided into sixty thousand shares of the par value of five dollars each, or three hundred thousand dollars in all. In determining the amount of tax, the tax commissioners proceeded first to ascertain the value of shares in the company, being governed in this respect partly by sales of shares and prices obtained therefor in the market by shareholders, and partly by the treasurer's return, which stated eleven dollars to be the market value of shares; and they fixed the value of the entire share capital at this rate, that is, at the sum of six hundred and sixty thousand dollars. They then found the value of the real estate of the corporation to be two hundred and forty-six thousand seven hundred dollars. And upon the difference,

namely, four hundred and thirteen thousand three hundred dollars, they computed the tax, at the rate of one and one sixth per centum prescribed by the act; and they duly notified the corporation of these proceedings.

If competent for the defendant corporation, after such valuation and notice by the commissioners, to prove that all its property, rights and assets were very much less in amount and value than the sum fixed by the commissioners as the aggregate value of all the shares issued by the company, then it was agreed to be taken to have been so proved for the purposes of this case: but in fact no such proof was produced before the commissioners, and there was no formal hearing before the commissioners upon the subject.

No considerable portion of all the shares in the company was ever offered for sale or sold at one time; and the shares were dealt in by brokers and others for purposes of speculation merely, and at prices varying widely at different times, and not always depending on the intrinsic value of the property and rights represented by them.

*J. C. Davis,* ( *C. Allen,* Attorney General, with him,) for the Commonwealth.

*F. A. Brooks,* for the defendants. Without questioning the reasonableness of a tax based on a market value of shares which does not exceed their actual value, yet when such market value is fictitious and speculative only, and greatly in excess of all property or rights belonging to the corporation, it is not reasonable in the sense of the Constitution, part 2, *c.* 1, § 1, art. 4.

In the franchise tax cases heretofore passed upon by this court, the market value of shares has never been found by the commissioners to be in excess of the par value or authorized capital. But, supposing that the basis of such a tax is not limited to the amount of authorized capital, but may be commensurate with the value of all the estate and rights of the corporation, yet the tax in this case was based on a market value to a great extent fictitious and to that extent the defendants ask to be relieved from it. If it be said that the market price of the shares, though speculative, yet measures something obtainable therefor by the shareholders,

and so represents property, this property, if any, pertains neither to the franchise nor the corporation taxed, but to the individual shareholders alone.

WELLS, J. This case stands upon the same ground as *Commonwealth* v. *Boston Wharf Co.* 12 Allen, 298. The defendants complain that the valuation, upon which the amount of the tax is computed, is excessive and unreasonable, and therefore that either the tax is entirely invalid, or the defendants are entitled to be relieved to the extent of the excess. The return made by the treasurer of the corporation stated the market value of the shares. This return, verified by information of actual sales of such shares, governed the tax commissioners in fixing the value of the aggregate capital stock upon which the tax was laid. It is not contended that there is any error in the tax if the standard adopted by the commissioners is the correct and proper one by which to determine its amount. But the defendants contend that the value so computed is an artificial one, and greatly in excess of the real value of the entire property of the corporation; and that the commissioners erred in disregarding entirely the actual pecuniary condition of the corporation and the value of its real and personal property.

The court are of opinion that, in the estimate or computation of the value of the capital stock of the corporation, the judgment of the tax commissioners is not open to modification or revision by any other tribunal. But, if this were otherwise, we are all of opinion that the standard adopted by the commissioners was the correct one. The computation or estimate to be made by them is in no legal sense a valuation of the property of the corporation. The returns required from the corporation furnish no means for such a valuation; and the statute neither requires nor contemplates it. The corporation is to return " the cash market value of the shares;" and the commissioners are to " ascertain " the "market value of all the capital stock" of the corporation. If the corporation fails to make the returns, or if the commissioners are not satisfied with the returns made, they may seek information and ascertain the true market value "otherwise." But whether they ascertain the value from the returns,

or obtain it " otherwise," the valuation that is to be ascertained is nothing else than the market value of all the shares of the capital stock of the corporation. This court held, in the case of *Chicopee* v. *Hampden*, 16 Gray, , that the market value of all the shares of the capital stock was not the proper measure of the value of the property of a corporation; and the converse must be equally true, namely, that the property held by a corporation does not furnish a proper measure of the value of its capital stock regarded as a franchise. The market value of corporate stock must be determined like the market value of any other commodity, by the price that it commands upon actual sales. This is undoubtedly what was intended by the statute; and the mode adopted by the commissioners to ascertain the value of the capital stock conformed both to the letter and the spirit of the law.

The provision of the sixteenth section of the act, that corporations shall, when required, submit their books to the inspection of the commissioners, does not imply an investigation and valuation of their property, unless such investigation becomes necessary by reason of the absence of other means of information by which to determine the value of the stock. It sometimes occurs that all the shares of a corporation are held in a few hands, and so controlled that no sales take place, and no means of ascertaining the market value of the shares can be reached. In such cases an inspection of the books showing the amount and kind of investments, the nature and extent of the business, and the amount of profits realized, would afford the means of a reasonable approximation to the value of the shares of the corporate stock. But when the commissioners have arrived at their valuation, in this as well as in the other modes which are open to them, the result is, both in form and in legal intendment, " the market value of all the capital stock " as made up of the aggregate of the incorporeal shares, and not as consisting of the real and personal property held by the corporation.

The deduction, from the value of all the capital stock thus ascertained, of the value of the real estate and machinery returned as subject to local taxation, does not indicate that the

" excess" thus obtained represents in any sense the other personal property of the corporation, nor that it is intended as the measure of the value of such other property. The legislature saw fit to relieve corporations from the burden of this tax to the extent to which they were subject to local taxation upon their property; and this purpose could be effected with greatest simplicity and uniformity by the mode adopted.

Upon all these considerations we are clear in opinion that the correctness of the valuation, ascertained from the market value of the shares in the manner stated in this case, cannot be impeached by proof that it is greatly in excess of all the " property, rights and assets" owned or held by the corporation. It does not depend upon the question whether the corporation has more or less of property, nor in what that property consists.

The defendants contend further that the franchise of a mere land company cannot be said to possess any value beyond that belonging to the property of the corporation; that in these cases the market value of the shares was fictitious and speculative only, and greatly in excess of all property and rights belonging to the corporation; and therefore that, even as a franchise tax, this, as imposed upon these defendants, is an unreasonable tax, in a sense obnoxious to the limitation of the Constitution. We cannot accede to the premises upon which this argument is founded. The franchise of a mere land company has a value beyond that belonging to the property itself. The combination of capital; the capacity to hold and manage large amounts of real estate under one direction, free from competition among those interested, from change by death and disturbance by the chances of individual life; whereby the ultimate development and gradual sale may be secured in the most advantageous manner possible; and many other considerations which readily suggest themselves, make the privilege of a corporate organization in such cases one of great value and importance. The very magnitude of the entire estate, when held in individual hands, will depress its gross value in the market; while, under corporate ownership and management, the separate shares, which give to the holder the assurance of participation in the

future development and appreciation of the property, will command a much higher proportionate price. The convenience with which the interests of the several shareholders are held, and the facility of transfer of the shares, are elements of great influence in giving value to the capital stock. And we are not prepared to say that even a merely speculative value, conferred upon stock by the advantages of its corporate character and the privileges thereto pertaining, may not afford a proper basis for the imposition of a tax like this.

Upon the question of the reasonableness of the excise, as imposed in this case, the fact is not to be overlooked that the same statute which imposes the tax upon the corporation also relieves the shareholders from the burden of local taxation, to which the shares had been previously subject as personal estate in their hands; and that in such local taxation the same mode of determining the value of the shares was necessarily adopted.

We cannot doubt that an excise tax so laid is reasonable, in the sense of the constitutional provision; and that no apparent discrepancy between the value of the corporate stock, as such, and the amount or value of the property in the present possession and ownership of the corporation, is of itself a ground upon which to defeat, either in whole or in part, the collection of the tax imposed according to a valuation of the stock at the price which is fixed in the market by actual sales of the shares.

According to the agreement, therefore, judgment is to be entered for the plaintiff for the full amount of the tax with interest.*

---

* A similar decision was made at the same time in the case of COMMONWEALTH vs. BOSTON WATER POWER COMPANY, which was submitted for decision upon the arguments in the foregoing case.