BOSTON AND LOWELL RAILROAD COMPANY *vs.* COMMON-
WEALTH.

A corporation, having reserved profits to an amount exceeding twenty per cent. of its cap-
ital, and having authority to create additional stock, declared a dividend of twenty per
cent. on its existing shares, payable in six years to their then holders, either in money
or stock at the option of the corporation, interest thereon to be paid meanwhile on a cer-
tain day each year to the holders on that day. After declaring this dividend, it created
new stock of the same par value; but the market value of the old shares, to which the
privilege of the dividend was thus attached, was twenty per cent. more than that of the
new shares, and the difference was owing wholly to this privilege. *Held,* that, in com-
puting the true value of the corporate franchise, for the purposes of taxation, under the
St. of 1865, *c.* 283, § 4, the tax commissioner was not in error in estimating the fair cash
valuation of all the shares of the capital stock by adding the actual market value of the
old shares to that of the new shares, without making any deduction on account of the div-
idend.

PETITION under the St. of 1865, *c.* 283, for the proportional
repayment of a tax assessed for the year 1867, on the petition-
ers' corporate franchise, and paid by them under protest; on the
ground that, in computing, under § 4, the value of the franchise,
the tax commissioner erroneously included an excess of twenty
per centum in the market value of 3660, being all but 28, shares
of their capital stock, by omitting to discard from his estimate
the enhancement of such value by reason of the attachment to
them of a certificate and obligation for the future payment of a
dividend of twenty per centum which was declared before the
28 shares were issued. The answer admitted that the tax com-
missioner fixed the market value of the 28 shares, to which no
such obligation was attached, at a sum twenty per centum less
per share than the market value of the other 3660 shares, and
ascertained and adjudged the fair cash valuation of all the
shares accordingly; and justified the assessment, based on such
a valuation, upon the ground that the privileges to which the
holders of the 3660 shares became entitled were attached to and
formed a part of the shares, and were not separate from and
independent of the shares, as was alleged in the petition; that
they were *not* saleable and had *no* market value apart from the
shares; and that the additional market value given to the shares

by reason of them formed a part of the true market value of the capital stock of the corporation.

The case was heard by *Wells*, J., and reserved for the determination of the full court, on the petition, answer, and a statement of facts agreed substantially as follows : ·

The directors of the corporation voted, on November 26, 1866, " that a dividend of twenty per centum on the capital stock of the company be now declared ; that a payment of said dividend shall be made, at the office of the treasurer, to stockholders of December 5, 1866, on and after January 1, 1867, by incorporating into each certificate of stock, outstanding on that day, the following certificate of dividend, to be signed by the treasurer, viz : ' There will be due and payable on October 1, 1873, to the then holder of these shares, twenty per centum on the par value thereof, payable either in the stock of the company at par or in money, at the option of the corporation, on the surrender of this certificate by the holder thereof at the office of the treasurer ; and until said October 1, 1873, interest from January 1, 1867, at the rate of three per centum per annum on said twenty per centum dividend, will be payable on the first day of January, annually, at the office of the treasurer, to the stockholder of such share, as recorded on the fifteenth day of December previous, and that the treasurer be directed to give notice by mail to each stockholder of the substance of the foregoing vote, and to call in all certificates of shares which shall be outstanding on December 5, 1866, and issue to the holders thereof new certificates which shall contain dividend certificates as above."

Before May 1, 1867, the owners of substantially all the shares entitled to the dividend received the new certificates indorsed as provided in the directors' vote of November 26, 1866, and " receipted for said dividends."

On May 14, 1867, the corporation made a return to the tax commissioner under the St. of 1865, *c.* 283, § 3, under the oath of its treasurer, among other things, that, on May 1, 1867, the whole number of shares in the capital stock was 3688, of the par value and market value of $500 each ; and on December 18, 1867, an additional return that, of the 3688 shares in the

capital stock on May 1, as returned to the commissioner, 28 shares only, which were specified, were not entitled to the dividend.

"At the time the dividend was voted, the amount of reserved profits of the corporation was $553,835.82, the dividend amounting to $366,000. The corporation also owed a debt of $470,000, due and payable in 1873, the holders of which debt had a right, by the terms of the bonds given for it, to take their payment in money or stock of the corporation at par. The corporation had also authority to increase its capital stock, by adding thereto a thousand shares of the par value of $500 each, to be issued whenever, and in such amounts, as the directors should determine. On May 1, 1867, the market value of the shares of the stock of the corporation, not entitled to the dividend of twenty per centum, was $500. At the same time, the shares of the stock entitled to the dividend were of the market value of $600, which included the value of the stock and dividend. The 28 shares of stock issued after the dividend was declared were entitled to all rights, privileges and benefits to which the old stock was entitled, except said dividend ; the only difference between the old and new stock being that the old was entitled to the dividend, and the new was not."

*J. G. Abbott*, for the petitioners. The value of a corporate franchise cannot be increased for the purposes of taxation by adding to it the amount of a dividend declared before the time of the assessment. The object of the St. of 1865, *c*. 283, was, to tax all the property of each corporation, including its franchise ; and no more. For this purpose the market value of the shares is to be ascertained, and their fair cash valuation estimated therefrom and taken to be the true value of the franchise. But by the assessment in question the petitioners are subjected to a tax not only on all their property, including their franchise, but also on a debt of $366,000 which they owe. By their act of incorporation, St. 1830, *c*. 4, the par value of all their shares was fixed at $500. There is no provision for an unequal valuation of different shares. The value of the twenty-eight new shares fixes the value of the property and franchise, subject to

the dividend owed. Suppose a large amount of the regular dividends to remain unpaid on any shares, such shares would sell in the market for a proportionally larger sum than the other shares; yet it would hardly be contended that such an additional value should be considered in estimating the value of the franchise.

Whenever a corporation makes a dividend of profits among the shareholders, the amount of the dividend becomes a debt of the corporation, for which, when due, an action can be maintained. *French* v. *Fuller*, 23 Pick. 108. *Sargent* v. *Franklin Insurance Co*. 8 Pick. 90. From the time it is declared, the amount of it forms no longer a part of the property of the corporation, and cannot be reckoned part of the shares, although payable to the holders of them. The shares represent the property of the corporation and its franchise, subject to all its debts, and among others to the very dividend due to the holders of them; and the declaring of the dividend reduces the value of the stock instead of enhancing it.

In this case, the dividend not being payable at the time it was made, the corporation agree to pay interest upon it. It is "money at interest," or "a debt due" to the shareholders, either of which must be taxed directly to them in the town where they reside. Gen. Sts. *c*. 11, § 4. But, by the action of the tax commissioner, being included in the estimate of the value of the franchise, it is taxed twice over.

The fact that the dividend is payable at a future day does not change the character of it, and render it taxable as a part of the corporate property. No law requires dividends to be made payable the day they are declared, and in fact they seldom are so. The only important question is, whether this dividend is a debt, an obligation of the corporation, and not a part of its property; in deciding which, the fact that it is payable presently or at a future time is immaterial. Nor does the fact that the dividend belongs to the person who shall hold the stock, when it is payable, alter its nature or character. It still remains a debt due in the present and payable in the future, no matter to whom it is due or belongs.

*J. C. Davis*, Assistant Attorney General, (*C. Allen*, Attorney General, with him,) for the Commonwealth, besides arguing on the merits, objected that the petition could not be maintained under the St. of 1867, *c*. 52, § 2, the tax in dispute not being assessed upon property, but being an excise on the corporate franchise.

COLT, J.   Upon the pleadings and facts agreed, the court is of opinion that there is no illegality in the assessment upon the plaintiff corporation.   Under the provisions of the St. of 1865, *c*. 283, it is plain that the actual, and ordinarily the market, value of the stock of any corporation, depends upon its capacity to make profitable returns in future dividends to its shareholders. If its present resources are known, and its prospective profits appreciated by the public, if there is confidence in the fidelity and integrity of its officers, the market value of its shares will be the same, whether future dividends are promised and certified in advance by the directors or not.   It is not merely the present prosperity, but the probability of future returns, which are elements in determining the value of the corporate franchise.   Thus it is reasonable to assume that the aggregate market value of all the stock of the plaintiff corporation, taking into account the amount of reserved profits on hand and the state of facts disclosed here, would, except for the peculiar circumstances of the case, have been equal to the rate determined upon by the tax commissioners, even without the action of the directors of November 1866.

By the terms of the outstanding debt of the corporation, the creditors had a right at maturity to take pay in stock to be then issued at par.   So long as the character and prospects of the corporation were such as to carry the market value of its shares above their par value, this future right to convert the loan into stock would reduce not only the market but the actual value of the existing shares.   The action of the directors, of November 1866, in declaring a dividend payable to the then stockholders, at about the time of the maturity of the loan, either in stock or cash at the option of the corporation, obviated to some extent the injustice which it was thought would be the result of per-

mitting the bondholders to come in and share the benefits of a reserved fund of profits already accumulated. In other words it gave to the existing shareholders the profits which were thought to belong to them, instead of allowing them to remain for the benefit of those bondholders, who might come in under the new issue of stock. But the plan adopted, while thus equitable, as alleged, to the old shareholders, had the necessary effect to increase the market value of their shares, and to cause them more nearly to represent the actual value of the corporate franchise.

For reasons no doubt satisfactory at the time, it was not thought advisable to issue new stock to the then shareholders in the form of a dividend. But the action taken seems to have reached practically the same result to them. By the arrangement the privilege was conferred upon the shares, and passed with them to each holder of the stock in succession. The fact that a dividend is earned and declared must necessarily increase the market value of the stock, and keep it up until the time of the payment of the same has passed. When it is overdue, it cannot, though unpaid, affect the value of the stock, because it is then separated from it and is due to the person who was the holder.

It is the aggregate value of all the shares, which must be taken as the value of the franchise for taxation; and it makes no difference that, by reason of privileges more or less permanently attached to some of the shares, there is a difference in the market value. If this was in the form, common in some states, of preferred stock, it would then go in at its market value, with the common stock at its value, to make the aggregate. The privilege given to the old shares represents profits now earned by the corporation which cannot be withdrawn until the time fixed for the payment of the dividend. And though in one sense it is a debt of the corporation, yet it is no more a debt than are the reserved profits a debt, which may be said to be due to the individual corporators. It is an element which must be included in ascertaining the value of the franchise.

The action of the commissioners can in no just sense be

deemed to be adding the debt of the corporation to the value of the property taxed; nor can it be claimed that the right of a stockholder to a dividend declared, but not yet due and payable, is taxable as money at interest, or a debt due, directly to the person in the town where he resides. The dividend may, at the option of the corporation, never be paid in cash, but by the issue of new shares. And such new issue, while it would certainly add nothing to the actual value of the property and franchise, would, upon strict principles, add nothing to the aggregate market value of all the shares; because the value of the privilege will always be added to the shares to which it is attached. *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 305.

Reaching this result upon the merits, we have not considered the question whether this petition can be maintained under the St. of 1867, c. 52.                                    *Petition dismissed.*