BOSTON AND ALBANY RAILROAD COMPANY *vs.* COMMONWEALTH.

Suffolk.    March 25, 1892. — June 24, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Recovery of Corporate Tax — Demurrer — Appeal — Unissued New Shares.*

Under the Pub. Sts. c. 13, §§ 38–40, which provide that in taxing a railroad corporation the aggregate value of the shares in the capital stock is to be taken as a basis of assessment, the Commonwealth cannot include, in estimating such value, proposed and unissued new shares in the capital stock.

Where the Commonwealth is the only party defendant, an appeal, taken under the Pub. Sts. c. 151, §§ 13, 16, from a decree overruling a demurrer should be in the name of the Commonwealth, and not in that of the Attorney General.

By the Pub. Sts. c. 151, § 19, a party who has by accident or mistake omitted to claim an appeal from a decree overruling a demurrer within the time allowed may be permitted to appeal at any time within one year. *Held*, where an appeal taken in the name of the Attorney General should have been taken in that of the Commonwealth, that, although the formal objection had not been waived, yet as

leave to enter an appeal now might be granted, and as the case had been fully argued on the merits, the substantial question would be considered upon which the decision of the court was desired.

PETITION to this court by the Boston and Albany Railroad Company to recover taxes paid under protest. The petition set forth that the capital stock of the petitioner on September 29, 1890, was $20,000,000, divided into 200,000 shares; that on that date the directors voted to increase the same by the issue of 50,000 new shares, so that the capital would be $25,000,000; that notice thereof was given to each stockholder of record on September 24, 1890, announcing that he would be entitled to subscribe on or before January 5, 1891, for one new share of stock for every four shares held by him respectively, on the payment of one hundred dollars a share, ten dollars on January 5, 1891, and ninety dollars on January 5, 1892, when certificates of stock were to be issued; that payments might be made before these dates, but no interest would be allowed in case of such prepayments, and no certificates of stock would be issued before January 5, 1892; that on May 1, 1891, said company had received $34,000 from persons who had subscribed for and would be entitled on January 5, 1892, to certificates for 340 shares of the new stock, and had received from persons who had subscribed for 48,974 new shares of the new stock ten per cent of their subscriptions, or $489,740; that on or about May 1, 1891, the fully paid subscriptions sold in the market for $190 each, and the subscriptions upon which ten per cent only had been paid had a market value of one hundred dollars each; that no certificates of stock were issued, and no dividends paid upon the subscriptions; and that the tax commissioners assessed 340 fully paid subscriptions as if they were shares of existing capital at a valuation of $190 each, and the 48,974 subscriptions upon which ten per cent had been paid as if they were shares of existing capital at a valuation of one hundred dollars each, and upon said two classes of subscriptions imposed a tax of $58,628.94.

The claim of the petitioner was based upon the ground that there was, as matter of law, no capital stock of the company existing on May 1, 1891, except the $20,000,000 of capital, upon which the tax had been paid without protest.

The defendant demurred for want of equity. The Supreme Judicial Court overruled the demurrer; and the Attorney General appealed.

*G. C. Travis*, First Assistant Attorney General, for the Commonwealth.

*S. Hoar*, for the petitioner.

ALLEN, J. There is an informality in the appeal from the decree overruling the demurrer, and in the appeal from the final decree. The Commonwealth is the only party defendant, and the appeals should have been in its name. The appeals taken were not authorized by law. Pub. Sts. c. 151, §§ 13, 16. But by § 19 a party who has by accident or mistake omitted to claim an appeal within the time allowed for that purpose may be permitted to appeal at any time within one year. Under these circumstances, although the formal objection has not been waived, yet, as leave to enter an appeal now might be granted, and as the case has been fully argued on the merits, we have considered the substantial question upon which our decision is desired.

That question is whether the Commonwealth, in levying the corporation tax upon the petitioner, had a right to include the proposed and unissued new shares in estimating the value of the shares in the petitioner's capital stock.

The provisions of statute for the taxation of railroad corporations are found in Pub. Sts. c. 13, §§ 38–40. Under these provisions the aggregate value of the shares in the capital stock is to be taken as a basis.

There is no doubt that for certain purposes one may be considered as a stockholder of a corporation before he has received a certificate of his shares, or even paid for them. It has been so held under statutes making stockholders liable for debts of a corporation. *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385, 395.

An examination of the various provisions of the statutes leads to the conclusion that for the purpose of levying the corporation tax only shares which have been fully paid for, and which are either actually issued, or at any rate are ready to be issued, can be included in the valuation. There is a general provision that " no corporation, unless specially authorized, shall issue any share for a less amount to be actually paid in thereon than the

par value." Pub. Sts. c. 105, § 17. When the capital stock of a railroad corporation is increased, the new stock, whether taken by the existing stockholders or sold by auction, must be paid for in cash at not less than par, or no certificate can be issued therefor. Pub. Sts. c. 112, §§ 58, 59. At all meetings of railroad corporations each stockholder is entitled to one vote for each share held by him, not exceeding, however, one tenth part of the capital stock. Pub. Sts. c. 112, § 53. If a railroad corporation issues certificates of stock when the par value of the shares so issued is not first paid in cash to its treasurer, all certificates so issued are void. Pub. Sts. c. 112, § 61.

Where a corporation increases its capital stock, an accepted subscription for new shares constitutes in the first instance a contract between the subscriber and the corporation, which creates reciprocal rights and obligations; but until the time comes for the issue of the new shares according to the terms of the contract, it cannot, in any usual and ordinary sense of the words, be said that the subscribers become holders of shares. The peculiar rights of shareholders, such as the right to vote at meetings and to receive dividends of profits, do not exist until then. It is obvious, under the statute above cited, that one who has subscribed for shares and paid in only ten per cent of the par value thereof is not entitled to vote at meetings. The provision that each stockholder is entitled to one vote for each share held by him means one vote for each full paid share, such as the other statutes allow to be issued. There is no provision for splitting votes, and allowing those who have paid ten, twenty, or fifty per cent a vote in proportion to the amounts so paid in by them. The authority which the petitioner possessed for increasing its capital stock involved, within reasonable limits, the power in its board of directors to determine when the payments should be made in order to effect such increase. Pub. Sts. c. 112, § 58. This power is necessarily incident to the power expressly granted. And when the board of directors, acting in good faith towards the Commonwealth, and within reasonable limits, has fixed the time for payments to be made, and for the increase to take effect, the creation of the new shares is postponed until that time arrives. During the interval, the relation between the subscriber for new shares and the corporation is that of parties who have

contracted with each other that the subscriber should become a shareholder in the future.    Where a corporation had issued coupon notes payable to bearer, which were convertible at certain fixed dates into stock, it has been expressly held that a holder of such notes prior to their conversion into shares was in no sense a stockholder in the corporation.    *Pratt* v. *American Bell Telephone Co.* 141 Mass. 225, 230.    In the present case the great majority of the subscribers had not paid the par value of the shares subscribed for, but only ten per cent thereof.    They could not be entitled to an issue of the shares until payment of ninety per cent more.    For the purpose of taxation, the petitioner was bound annually to return to the tax commissioner " a complete list of its shareholders, with their places of residence, the number of shares belonging to each on the first day of May," with certain other particulars.    Pub. Sts. c. 13, § 38.    The shares belonging to each stockholder cannot by any just use of language be deemed to include those for which he had merely subscribed, but which were not paid for nor ready to be issued.

On the whole, it seems to us that the tax upon the corporate franchise of the petitioner could not lawfully be based on a valuation which included the rights of subscribers on the 1st of May, 1891, when the shares were not to be issued until the 5th of January, 1892.    See *Sewall* v. *Eastern Railroad*, 9 Cush. 5, 11; *Fisher* v. *Essex Bank*, 5 Gray, 373; *Field* v. *Pierce*, 102 Mass. 253, 261; *St. Paul, Stillwater, & Taylor's Falls Railroad* v. *Robbins*, 23 Minn. 439; *Spring Co.* v. *Knowlton*, 103 U. S. 49, 57; *Busey* v. *Hooper*, 35 Md. 15, 31; *Burrall* v. *Bushwick Railroad*, 75 N. Y. 211, 216; *Neiler* v. *Kelley*, 69 Penn. St. 403, 407.

The liability of this valuable right and interest to taxation in another form is not before us.

*Decree affirmed.*