COMMISSIONER OF CORPORATIONS AND TAXATION *vs.*
BOSTON EDISON COMPANY.

Suffolk.   February 5, 1940. — January 28, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Tax,* Excise on corporation, Electric company. *Value. Evidence,* Of value. *Words,* "Capital stock," "Shares constituting . . . capital stock," "Fair cash value," "Fair market value," "True market value."

The tax imposed by § 58 of G. L. (Ter. Ed.) c. 63 upon corporations subject to § 53 as amended is an excise upon the act or privilege of being a corporation and doing business as such, represented by its corporate franchise.

In ascertaining, under § 55 of G. L. (Ter. Ed.) c. 63, as amended by St. 1936, c. 134, the "fair cash value of all the shares constituting" the "capital stock" of an electric company which is to "be taken as the true value of its corporate franchise" for the assessment of an excise under § 58, the shares in the hands of the stockholders and regarded from the stockholders' standpoint are to be valued and not the property of the corporation.

Exchange value is the test to be applied in carrying out the provisions of § 55 of G. L. (Ter. Ed.) c. 63 as amended, that the tax commissioner shall "ascertain" the "true market value of the shares" of an electric company "and shall estimate therefrom the fair cash value of all the shares."

The Appellate Tax Board, upon the question whether it was proper to assess an excise under § 58 of G. L. (Ter. Ed.) c. 63, upon an electric company whose stock had an active market on the stock exchange with buying and selling prices readily ascertainable, properly determined that evidence "that the intrinsic value of the assets and property of the corporation is in excess of the market value of all the shares" was "not material."

APPEAL from a decision by the Appellate Tax Board.

*E. O. Proctor*, Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*F. M. Ives*, (*W. R. Cook* with him,) for the taxpayer.

FIELD, C.J.   This is an appeal by the commissioner of corporations and taxation from a decision of the Appellate Tax Board (see G. L. [Ter. Ed.] c. 58A, § 13, as appearing in St. 1933, c. 321, § 7), granting an abatement in the amount of $396,682.20 of a corporate franchise tax assessed by the commissioner for the year 1938, upon the Boston Edison Company (herein referred to as the taxpayer), an electric company as defined in G. L. (Ter. Ed.) c. 164, § 1, organized under the laws of this Commonwealth.

The taxpayer in the year in question was subject to the provisions of G. L. (Ter. Ed.) c. 63, § 53, as amended (see St. 1934, c. 323, §§ 6, 11), and consequently was subject to the provisions of G. L. (Ter. Ed.) c. 63, § 58, which provides that every corporation subject to said § 53 "shall annually pay a tax upon its corporate franchise, after making the deductions provided for in section fifty-five," at a rate therein fixed.   The deduction therein referred to applicable to the taxpayer is the value "as found by the commissioner of . . . [the corporation's] works, structures, real estate, motor vehicles, machinery, poles, underground conduits, wires and pipes, subject to local taxation wherever situated."   G. L. (Ter. Ed.) c. 63, § 55, Fifth.   See now St. 1939, c. 24, § 7.   There is no controversy as to the rate of tax or as to the propriety or amount of the deduction.   The value of the deductible items as found by the commissioner and by the Appellate Tax Board was $113,-172,735.   The sole question in controversy is the value of the taxpayer's "corporate franchise" upon which, after making this deduction, the tax, according to the provisions of the statute, was to be assessed.

The commissioner assessed a tax upon the taxpayer purporting to be based upon the value of its corporate franchise in excess of the deduction required by the statute of the value as above stated of its property subject to local taxation.   General Laws (Ter. Ed.) c. 63, § 55, as amended by

St. 1936, c. 134 (see now St. 1939, c. 24, § 7), applicable to the taxpayer, provides that the "fair cash value of all the shares constituting its capital stock on January first preceding . . . shall, for the purposes of this chapter, be taken as the true value of its corporate franchise." The Appellate Tax Board did not find expressly the value of the corporate franchise of the taxpayer or the "fair cash value of all the shares constituting its capital stock," but found "on all the evidence . . . that the fair cash value" of such shares on January 1, 1938, "did not exceed $113,172,735, the amount for which its property was assessed locally, and, therefore, no franchise tax was payable." Accordingly the board granted an abatement of the tax assessed by the commissioner.

The abatement granted by the board was clearly right unless there was error in the finding above recited of the fair cash value of the shares constituting the capital stock of the taxpayer. This finding, however, was a finding of fact. And the "decision of the board is 'final as to findings of fact.' G. L. (Ter. Ed.) c. 58A, § 13, as amended. Such findings cannot be reviewed by this court unless vitiated by error in an 'issue of law' raised before the board." "Appeals from the board to this court are only 'as to matters of law' and this court cannot 'consider any issue of law which does not appear to have been raised in the proceedings before the board.'" *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 383. The claim of appeal sets forth as alleged error of law this statement in the opinion of the board: "The stock in this case had an active market and the prices for which it was bought and sold could be readily determined. Evidence that the intrinsic value of the assets and property of the corporation is in excess of the market value of all the shares is not material." Other alleged errors are incidental to this alleged error or dependent thereon, or relate to matters of fact and not to issues of law.

The method prescribed by the governing statute for determining the "fair cash value of all the shares constituting . . . [the] capital stock" of the corporation that is

to "be taken as the true value of its corporate franchise" is as follows: "The commissioner shall ascertain from the returns or otherwise the true market value of the shares of each corporation required to make a return under section fifty-three or fifty-four, and shall estimate therefrom the fair cash value of all the shares constituting . . . [the] capital stock on January first preceding." G. L. (Ter. Ed.) c. 63, § 55, as amended by St. 1936, c. 134. This determination of value by the commissioner, however, is subject to review by the Appellate Tax Board on appeal. G. L. (Ter. Ed.) c. 63, § 60. G. L. (Ter. Ed.) c. 58A, § 6, as amended. The returns referred to are the returns that corporations such as the taxpayer are required by G. L. (Ter. Ed.) c. 63, § 53, as amended by St. 1933, c. 254, § 60, and St. 1934, c. 323, § 6, to make to the commissioner annually. In such a return a corporation is required to set forth, "as of January first of the year in which the return is made," the "total authorized amount of its capital stock; the amount issued and outstanding and the amount then paid thereon; the classes, if any, into which it is divided; the par value and number of its shares; the market value of the shares of each class of its stock outstanding" (clause First); a statement of its assets with the value thereof and of its liabilities (clause Second); a statement "of the profit or loss resulting from the business of the corporation for the twelve months ending with December thirty-first preceding the year in which the return is made" (clause Third); and a statement relating to its shareholders (clause Fourth).

It appears from the decision of the board that the taxpayer's return as of January first of the year in question was before the board. In accordance with the statutory requirement the record on appeal includes a copy of this return. See G. L. (Ter. Ed.) c. 58A, § 13, as amended. The record, however, does not set forth any evidence offered or admitted before the board. The decision of the board includes the following subsidiary findings of fact made by the board in addition to its findings of fact relating to deductible items: "On January 1, 1938 . . . [the taxpayer's] capital stock issued and outstanding consisted of

617,161 common shares, each having a par value of $100 . . . The stock has been listed on the Boston Stock Exchange for many years, is one of its most active issues, and is bought and sold practically every day. On December 31, 1937, and January 3, 1938, the exchange being closed on January 1 and 2, the price ranged from $120 to $121 per share. During the period from July 1, 1937, to June 30, 1938, the high was 140 and the low was 108. From October 1934, through April 1939, the high was 171. For the year 1935, 42,526 shares were dealt in; in the year 1936, 55,338; in 1937, 37,081, and in 1938, 30,229." Though the further statement that the "stock in this case had an active market and the prices for which it was bought and sold could be readily determined" is in the part of the decision entitled "Opinion," obviously it is a finding of fact. See *Assessors of Brookline* v. *Prudential Ins. Co., ante,* 300, 303. Unless the value of each of the shares of the taxpayer was in excess of $183.37 the aggregate value of all the shares did not exceed the value of the deductible items as found by the board and uncontroverted. The tax assessed by the commissioner was upon a "fair cash value of all the shares" of the taxpayer on the basis of $200 for each of the shares. The issue of fact between taxpayer and commissioner, so far as it can be expressed in the value of each outstanding share of the stock of the taxpayer, is, therefore, between a value not in excess of $183.37, as found by the board, and a value of $200, as claimed by the commissioner.

There is nothing in the record showing that the finding of the board that the "stock in this case had an active market and the prices for which it was bought and sold could be readily determined" was not warranted by the evidence. And it is not necessarily inconsistent with any of the subsidiary findings of the board. It is not necessarily inconsistent with the volume of sales found as compared with the number of shares outstanding. This finding of fact, therefore, must be accepted by us as true. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 4–5.

The commissioner, therefore, must rely on the alleged error of law in the statement in the opinion that "Evidence that the intrinsic value of the assets and property of the corporation is in excess of the market value of all the shares is not material." This statement must be considered in the light of the evidence before the board and of the facts found by the board. The record does not disclose that there was any evidence before the board "that the intrinsic value of the assets and property of the corporation is in excess of the market value of all the shares," apart from the return of the taxpayer.

The tax imposed by the statute in question is not a tax upon the property of a corporation subject thereto, but rather is an excise upon the act or privilege of being a corporation or doing business as such — which need not be more particularly defined — represented by its corporate franchise. The "fair cash value of all the shares constituting its capital stock" is merely the prescribed measure of the value of the corporate franchise. It is this value, less the value of the deductible items locally taxed, upon which the corporate franchise tax or excise is assessed. These principles were established by decisions rendered under the statute as it was first enacted in 1864. See St. 1864, c. 208; *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 76–77; *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 300–305. The changes in the form of the statute since that time have not rendered these principles inapplicable to the taxpayer — an electric company as defined in G. L. (Ter. Ed.) c. 164, § 1, organized under the laws of the Commonwealth — see *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 387, whatever may be the effect, as we need not decide, as applied to business corporations, of the provisions of G. L. (Ter. Ed.) c. 63, § 30 (3), originating in St. 1927, c. 258, § 1, which are not applicable to the taxpayer.

The contention of the commissioner that the statement or ruling objected to was erroneous as matter of law involves two fundamental questions: (a) one, as to the thing to be valued, (b) the other, as to the nature of the value to

be attributed thereto and the method of determining. such value.

First. Of course the ultimate thing to be valued is the "corporate franchise." But by express provision of the statute the "true value" of the corporate franchise of the taxpayer is the "fair cash value of all the shares constituting its [the corporation's] capital stock," so that the thing to be valued as an exercise of judgment is "all the shares constituting its [the corporation's] capital stock." We consider, therefore, the meaning of this phrase.

The words "capital stock," like the word "capital," may have different meanings when used in different connections. See *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, 371; *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 72; *Commissioner of Corporations & Taxation* v. *Filoon*, *ante*, 374, 382. But the natural meaning of "all the shares constituting its [the corporation's] capital stock" is such shares outstanding in the hands of the shareholders. See *Worcester* v. *Board of Appeal*, 184 Mass. 460, 463-465. The shares are to be regarded from the standpoint of the shareholders, not from the standpoint of the corporation as the general assets of the corporation including investments and surplus (see *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 72) or the property paid by the original shareholders for subscriptions to shares. See *Hood Rubber Co.* v. *Commonwealth*, 238 Mass. 369, 372; *Commissioner of Banks in re Prudential Trust Co.* 244 Mass. 64, 72. Compare *Commissioner of Corporations & Taxation* v. *Filoon*, *ante*, 374, 382-383. The fact that the "fair cash value of all the shares" constituting the "capital stock" of a corporation is to be estimated from the true "market value of the shares" of such corporation supports the conclusion that it is the shares of the corporation. in the hands of its shareholders, rather than the property of the corporation, that are to be valued.

The history of the statute also supports this conclusion. Prior to the passage of St. 1864, c. 208, whereby a corporate franchise tax or excise (see *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 526-528) was imposed on

certain corporations, corporate shares were taxed locally as personal property of the shareholders. *Salem Iron Factory Co.* v. *Danvers,* 10 Mass. 514. *Middlesex Railroad* v. *Charlestown,* 8 Allen, 330, 333. *Worcester* v. *Board of Appeal,* 184 Mass. 460, 462. *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 386. The corporation, however, was subject to the local property tax upon its real estate though not upon its personal property. *Salem Iron Factory Co.* v. *Danvers,* 10 Mass. 514. As early, however, as 1832, it was recognized that, in effect, taxation of corporate shares to the shareholders and of real estate owned by the corporation to the corporation resulted in double taxation, and a statute was passed (St. 1832, c. 158) providing for local taxation of the machinery of a manufacturing corporation, and providing further that, in assessing the shares of such a corporation, "there shall first be deducted from the value thereof, the value of the machinery and real estate belonging to such corporation, otherwise specifically taxed." See *New England & Savannah Steamship Co.* v. *Commonwealth,* 195 Mass. 385, 386. See also St. 1837, c. 86; Gen. Sts. c. 11, § 12, Second. But, as was said in the case just cited, "for obvious reasons this method of reaching for taxation the personal property of domestic corporations, especially that part of it whose value was represented by shares held by shareholders residing out of the Commonwealth, was defective." An attempt to remedy this particular defect was made in 1863 by St. 1863, c. 236, by requiring domestic corporations to pay an excise on shares of nonresident owners, but the statute was held unconstitutional in *Oliver* v. *Washington Mills,* 11 Allen, 268. In 1864, however — before this decision was rendered — St. 1864, c. 208, was passed imposing an excise on corporations based upon "the excess of the market value of all the capital stock of each corporation . . . [with exceptions not here material] over the value of its real estate and machinery, if any," locally taxed in the Commonwealth, § 5, and providing that the "shares in the capital stock of any corporation, . . . taxed by this act, shall be exempt from taxation to the shareholders." § 15. The returns provided

for by the statute to be made by corporations subject thereto, from which, "or otherwise," "the excess of the market value of all the capital stock" over the value of real estate and machinery locally taxed was to be estimated, were to include, among other things, the names and residences of the shareholders, "the amount of the capital stock of the corporation" and "the par value and the cash market value of the shares." § 2. The provisions of the statute indicate that the corporate excise imposed thereby was in the nature of a substitute for the local tax previously imposed on resident shareholders on account of the shares owned by them, but reaching also for taxation the shares owned by nonresidents. The statute not only referred to "market value of all the capital stock," but also provided for a deduction similar to that authorized by the previous statutes relating to local taxation of shares. It was not unnatural that the thing to be valued under such a substituted statute as the measure of the excise imposed thereby should resemble closely the thing to be valued for the purpose of the local tax previously imposed.

That the so called "tax" imposed by St. 1864, c. 208, was to be measured by the value of the shares in the hands of the shareholders, rather than by the value of the property of the corporation, was pointed out in a series of cases decided by this court in 1866 and 1867. In *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 76, it was said: "We do not understand that the legislature intended that the assessment authorized by that statute should be imposed as a tax on property. It was designed to be in the nature of an excise or duty on the franchise or privilege of each of the corporations designated, to be estimated and measured by ascertaining the excess of the market value of the capital stock or aggregate of the shares over the value of the real estate and machinery for which each corporation was assessed in the town or city in which it was established and carried on its business." And in *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, the court said in the course of an elaborate discussion (pages 301–306) of the nature of the tax or excise imposed by St. 1864, c. 208: "The tax is . . .

laid, not on ·capital stock as signifying the money paid in to carry on the business of the corporation or the property purchased therewith and owned by the corporation, but on capital stock representing the aggregate of the market value of the shares" (page 304), and it was pointed out that the provision for "the deduction of the value of the real estate and machinery from the aggregate market value of the stock allowed by the statute" was not inconsistent with the nature of the excise as so described, but that the "reason for the deduction is obvious. The real estate and machinery of corporations, under the general tax act, are subject to local taxation in the towns where they are situated. Inasmuch as all taxes on corporate property operate to take away a portion of that which would otherwise belong to shareholders, it would tend to inequality and to double taxation, if, in assessing the excise on the franchise, no deduction were made for what was taxed in a different manner elsewhere." Pages 305–306. The court concluded that the result "to which we have come on this part of the case is, that the tax in question was intended to be and is an excise on the franchise of corporations, and not on their property; that the imposition of it was a lawful exercise of legislative power under the constitution, and that the mode of measuring the value of the franchise by the market value of the whole stock, allowing the element of deduction as equitable in its general effect, is just, reasonable and valid." Page 306. Moreover, in *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, 21–22, the court said with respect to St. 1864, c. 208: "The computation or estimate to be made by them [the tax commissioners] is in no legal sense a valuation of the property of the corporation . . . the valuation that is to be ascertained is nothing else than the market value of all the shares of the capital stock of the corporation."

The board in its decision in the present case relied upon the *Lowell Gas Light Co.* case and the *Cary Improvement Co.* case. While the commissioner does not attack these cases as applied to St. 1864, c. 208, he contends that they are inapplicable to the present statute by reason of statutory changes that have intervened. This argument may, in

form, be addressed to the method of valuation rather than to the thing to be valued, but, in substance, it seems to be addressed, in part at least, to the thing to be valued, with the implication that it is now the capital stock of the corporation from the standpoint of the corporation, rather than the shares thereof in the hands of the shareholders, that is to be valued. We pass without discussion the question whether this argument, if sound, would render the excise unconstitutional as imposing a tax upon the corporate property that would not be proportional, since we are of opinion that the statutory changes have made no such change in the thing to be valued.

In 1865 — before the decision of the group of cases just above cited relating to St. 1864, c. 208 — St. 1865, c. 283, was passed amending and revising the previous statute. By this later statute corporations subject thereto were required to make returns in general similar to those required under the previous statute. A corporation was required to include, in such a return "the par value and the market value of the shares" of the corporation — instead of "the par value and the cash market value of the shares" as under the previous statute. § 3. The tax commissioner was required (a) to "ascertain, from the returns or otherwise, the true market value of the shares of each corporation," (b) to "estimate therefrom the fair cash valuation of all of said shares constituting the capital stock of such corporation" (c) "which shall be taken as the true value of its corporate franchise," § 4, and (d) "to ascertain and determine" the value of certain deductible items — in the case of a corporation like the taxpayer, its "real estate and machinery, subject to local taxation, wherever situated." §§ 4, 5. Each such corporation was required to pay "a tax upon its corporate franchise at a valuation thereof equal to the aggregate value of the shares in its capital stock" as above stated after making the statutory deductions. § 5. It is apparent that, as here described, the thing to be valued, the value of which was to be "taken as the true value of its [the corporation's] corporate franchise," was all the shares of stock of the corporation outstanding in

the hands of the shareholders. The language of the statute shows this intention, even more clearly, if that were possible, than the language of the previous statute that was so construed in the cases arising thereunder. And in *Boston & Lowell Railroad* v. *Commonwealth*, 100 Mass. 399, 404, a case that arose under St. 1865, c. 283, it was said that it was "the aggregate value of all the shares, which must be taken as the value of the franchise for taxation." The language of St. 1865, c. 283, with respect to the thing to be valued remained unchanged in Pub. Sts. c. 13, §§ 39, 40, yet under that statute the court in *Boston & Albany Railroad* v. *Commonwealth*, 157 Mass. 68, 70, in holding that unissued shares were not to be included in estimating the value of the shares in a corporation's capital stock, said that under the provisions of the statute "the aggregate value of the shares in the capital stock is to be taken as a basis." The statutory language with respect to the thing to be valued continued unchanged in R. L. c. 14, § 38. And in the case of *Worcester* v. *Board of Appeal*, 184 Mass. 460, 466, which arose while this statute was in effect and related to a distribution of the corporate excise among the cities and towns, the court said with respect to the statutory provision relating to such distribution that "it is evident that its purpose was to give to towns a share of this excise tax corresponding to that which under the former system they had to the tax upon the personal property of these corporations, or in other words that the share of each town in the excise tax is measured by the number of shares which under the former system would have been taxable in that town." This conclusion is in harmony with the concept of the corporate excise as in part in the nature of a substitute for the local property tax upon shares owned by residents of the Commonwealth and with the principle first established under St. 1864, c. 208, that the thing to be valued as a basis for the corporate excise is the shares of stock of a corporation in the hands of its shareholders. The language of the statute under which the tax or excise in question in the present case was assessed, so far as it relates to the thing to be valued, does not differ in any ma-

terial respect from the language first used in St. 1865, c. 283. As under that statute the thing to be valued was the shares of the corporation outstanding in the hands of the shareholders, the present statute is to be given the same interpretation. The aggregate value of the shares of the corporation in the hands of its shareholders is to be "taken as the true value of its corporate franchise." G. L. (Ter. Ed.) c. 63, § 55, as amended.

General Laws (Ter. Ed.) c. 63, § 53, Second, Third, contain provisions, originally introduced into the statute by St. 1914, c. 198, § 6, requiring a corporation such as the taxpayer to include in its return statements of its "assets . . . with the value thereof," including assets that are not deductible items, of its "liabilities," and of the "profit or loss resulting from the business of the corporation for the twelve months ending with December thirty-first preceding the year in which the return is made." Whatever may have been the purpose of this requirement of the inclusion of such statements in a return, the requirement cannot fairly be interpreted as modifying the express provision of the statute that the "fair cash value of all the shares constituting .... [the] capital stock" of the corporation shall "be taken as the true value of its corporate franchise," G. L. (Ter. Ed.) c. 63, § 55, as amended, by changing the nature of the thing to be valued — the aggregate of all the shares of the corporation in the hands of its shareholders. It is true that this court in *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 302, in sustaining the constitutionality of the "tax" imposed by St. 1864, c. 208, as an excise rather than a tax on property, mentioned that the "statute does not require that there should be any return made of the personal property held by corporations to the board of commissioners who are to fix the amount on which the assessment is to be reckoned, nor is there any valuation or estimate of such property to be made in order to arrive at the amount of the excise or duty." It is not to be thought, however, that the Legislature, by requiring statements of assets, liabilities, and profit and loss of a corporation to be included in its return, intended thereby to trans-

form the nature of the tax or excise, as long established and held constitutional, by providing that the thing to be valued as the basis thereof should be the assets of a corporation, its assets less its liabilities, or its capitalized earning power. This change in the requirements with respect to returns cannot rightly be held to carry so heavy a burden.

On this branch of the case the Commonwealth is not aided by the decision in *Ray Consolidated Copper Co.* v. *United States*, 268 U. S. 373, 377, where the court was dealing with the Federal capital stock tax imposed by the Revenue Act of 1918, 40 U. S. Sts. at Large, 1057, 1126, as an excise based upon the "fair average value of its [the corporation's] capital stock for the preceding year," and stated that the "capital stock of a corporation, its net assets, and its shares of stock are entirely different things." The language of the statute indicated that it was the "capital stock" from the standpoint of the corporation that was to be valued. The statute now under consideration bases the corporate franchise tax or excise, not upon the "capital stock" of the corporation, but upon "all the shares constituting its capital stock," which, in the light of the decided cases, are such shares from the standpoint of its shareholders.

The provisions of the statute (G. L. [Ter. Ed.] c. 63, §§ 30–52, as amended) imposing an excise on certain business corporations — with respect to the carrying on or doing business — based in part upon the "corporate excess" of such a corporation which is defined, in the case of a domestic business corporation, as "the fair value of its capital stock" less certain deductions (G. L. [Ter. Ed.] c. 63, § 30 [3]) — a definition substituted by St. 1927, c. 258, § 1, for "the fair cash value of all the shares constituting the capital stock of a corporation" less certain deductions — are not applicable to the taxpayer, and we make no intimation as to the meaning of the words "capital stock" as used in this definition.

The thing to be valued for the purpose of determining the "true value of . . . [the] corporate franchise" of the taxpayer, as the basis of the corporate franchise tax or

excise imposed upon it, therefore, was the aggregate of all the shares of the taxpayer outstanding in the hands of its shareholders, and not "the assets and property of the corporation." The "intrinsic value" of such "assets and property," referred to in the Commonwealth's claim of appeal, therefore, was material, if at all, only so far as it bore upon the value of the shares in the hands of the shareholders.

Second. The value of "all the shares" of the corporation outstanding in the hands of its shareholders — the thing to be valued — that is to be "taken as the true value of . . . [the taxpayer's] corporate franchise," by the terms of the statute, is the "fair cash value" thereof. But this value is to be *estimated* from the "true market value" of the shares. The latter value is to be *ascertained* not merely from the return of the taxpayer but from all available facts that are material upon such "true market value." It is not wholly clear why this dual standard was established by St. 1865, c. 283, § 4, and continued, except for a change from "fair cash valuation" to "fair cash value," up to and including G. L. (Ter. Ed.) c. 63, § 55, as amended, applicable to the present case, instead of the standard fixed by St. 1864, c. 208, of the "market value of all the capital stock," meaning, as defined in the cases arising under that statute, the shares of the corporation outstanding in the hands of the shareholders. It is not unlikely, however, that the words "fair cash valuation" in St. 1865, c. 283, § 4, were adopted by analogy to the then existing requirement that assessors "make a fair cash valuation" of "all the estate real and personal" within the respective towns and cities. See Gen. Sts. c. 11, § 24. See now G. L. (Ter. Ed.) c. 59, § 38. The "fair cash value," as these words are used in G. L. (Ter. Ed.) c. 63, § 55, as amended — expressed as the "fair cash valuation" in St. 1865, c. 283, § 4 — of the shares of a corporation in the hands of its shareholders is the ultimate value to be determined as fixing the "true value of its corporate franchise."

. In other connections, the words "fair cash value" may perhaps have a different meaning, but as here used they

refer ordinarily, if not always, to exchange value. In *National Bank of Commerce* v. *New Bedford,* 155 Mass. 313, 315, where the court had under consideration a petition for abatement of a tax on bank shares on the ground that that property was assessed "above the fair cash value," it was said, in language pertinent to the present case: "The thing of which the fair cash value is to be found is the stock or shares of the corporation. Value refers to exchange. The cash value of an article is the amount of cash for which it will exchange in fact. That amount depends on the opinion of the public of possible buyers, or of that part of it which will pay the most. If in their opinion the stock is worth only $102 per share, — if that is all that the stock will sell for, — it is vain to show that the net value of the property of the corporation, that is to say, the opinion of the public about a chief component element of the value of the stock, if uncontrolled, logically leads to a different value for the stock. It has been recognized judicially that the value of the property and the value of the stock might differ . . ." Since this case was decided — in 1892 — the statutes imposing a corporate franchise tax or excise upon the class of corporations embracing corporations like the present taxpayer have been amended, revised or codified many times, in each instance retaining the words "fair cash value." See R. L. c. 14, § 38; St. 1902, c. 342, § 3; St. 1903, c. 437, § 72; St. 1909, c. 439, § 2, c. 490, Part III, § 41; St. 1914, c. 198, § 6; G. L. c. 63, § 55; St. 1926, c. 279, § 6; St. 1936, c. 134. See also St. 1906, c. 463, Part II, § 212, Part III, § 126, c. 516, § 15. While the case just cited dealt with the words "fair cash value" as used in a different statute, it is to be assumed, in the absence of considerations to the contrary, that the later statutes culminating in G. L. (Ter. Ed.) c. 63, § 55, as amended, used these words as they had been judicially interpreted. See *Tobey* v. *Kip,* 214 Mass. 477, 479; *Whiting* v. *Board of Public Works of Holyoke,* 222 Mass. 22, 24. Moreover, in *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 262, the court said that, "generally speaking, when a statute requires the 'fair cash value' of property on a

certain day to be ascertained . . . it refers to the actual judgment of the public as expressed in the price which some one will pay . . . It means the highest price that a normal purchaser, not under peculiar compulsion, will pay at that time to get that thing." It was in this case suggested, though not decided, that the word "fair" might "add a little latitude to the definition and . . . allow a correction of whatever was the fleeting accident of a moment of panic by the consideration of values on either side of the precise time fixed by the statute." And in *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 208, where the question involved was the "fair cash value" of real estate for the purpose of local taxation, it was said that it "is possible that taxation cases may arise where, in order to give rational effect to the declared intention of the Legislature, the words 'fair cash value' must be given a somewhat more elastic significance than heretofore has been attributed to them," and illustrative cases were cited. But there is nothing in the record of the present case to show that it is not within the ordinary rule that "fair cash value" means exchange value. The nature of the thing to be valued — the shares of stock of the corporation in the hands of its shareholders — and the finding of the board that this "stock . . . had an active market and the prices for which it was bought and sold could be readily determined" are in accord with this conclusion. The words "fair cash value" clearly do not mean the value to the owner alone, that is, a value based on an element or elements of value of the property in the hands of its owner that would not affect its exchange value. *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 209.

There is nothing in the statutory requirement, that the "fair cash value of all the shares" constituting the capital stock of a corporation shall be *estimated* from the "true market value of the shares," that tends to negative the conclusion that the value of the shares to be determined is exchange value. Indeed, this provision emphasizes the conclusion that exchange value is the test. The words "fair cash value" and the words "fair market value" are fre-

quently treated as synonymous. See *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 207; *Assessors of Quincy* v. *Boston Consolidated Gas Co.* 309 Mass. 60, 63. In *Massachusetts General Hospital* v. *Belmont*, 238 Mass. 396, 402, it was said of elements to be considered in deciding what is the "fair cash value" of the property to be valued that "the sum of them all cannot inflate the value beyond the price at which the property will sell in the market under fair conditions at the time designated." (We perceive no significant distinction between "fair market value" and "true market value.") But, in accordance with familiar principles of statutory construction, neither the clause containing the expression "fair cash value" nor that containing the expression "true market value" is to be regarded as superfluous unless no other course is open. *Kennedy* v. *Commissioner of Corporations & Taxation*, 256 Mass. 426, 429. *Commonwealth* v. *McMenimon*, 295 Mass. 467, 469. And the clauses are not identical in meaning. They relate to different subjects. It is the "fair cash value" of "all the shares constituting . . . [the] capital stock" of such a corporation that is to be estimated from the "true market value" of "the shares," that is, of the separate shares. It is common knowledge that the exchange value of "all the shares" of a corporation, considered as a single unit, may differ from the aggregate exchange value of the shares considered as separate units. And in view of the original purpose of the corporate franchise tax or excise as to some extent a substitute for the local property tax on the shares in the hands of the shareholders, it was natural to make the value of such shares considered separately the basis for the corporate franchise tax or excise. That such is the meaning of the statute appears from the language of the opinion in a case decided by the court in 1868 under St. 1865, c. 283 — the statute in which the measure of value was first stated in substantially the form in which it now appears. It was said in that case, *Boston & Lowell Railroad* v. *Commonwealth*, 100 Mass. 399, 404, that it was "the aggregate value of all the shares, which must be taken as the value of the franchise for taxation." And this lan-

guage was substantially repeated in *Boston & Albany Railroad* v. *Commonwealth*, 157 Mass. 68, 70, with respect to Pub. Sts. c. 13, § 39, where the same standard of value was prescribed as was prescribed by St. 1865, c. 283, § 4, and is now prescribed by G. L. (Ter. Ed.) c. 63, § 55, as amended. The statute, therefore, is to be construed as laying down as a formula for determining the exchange value of "all the shares" of a corporation, that such exchange value shall be *estimated* from the exchange value of the separate shares in the hands of the shareholders rather than as requiring an independent determination of the exchange value of "all the shares" considered as a unit. The requirement that the exchange value of "all the shares" be *estimated* from the prescribed data, descriptive of the method of determining such value, supports this conclusion.

It follows from what has been said that the governing statute provides that the "true value of . . . [the] corporate franchise," which, subject to statutory deductions, is the basis for the corporate franchise tax or excise, shall be determined by applying the exchange value — in the language of the statute, the "true market value" — of the shares of stock in the hands of its shareholders to the capital structure of the corporation represented by its various classes of stock outstanding. See *Boston & Albany Railroad* v. *Commonwealth*, 157 Mass. 68. It may well be that, if the decisions in *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, and *Commonwealth* v. *Cary Improvement Co.* 98 Mass. 19, had been made before St. 1865, c. 283, was passed, the Legislature might not have deemed it necessary to change the formula for determining the amount upon which the corporate franchise tax or excise should be based from that used in St. 1864, c. 208, § 5 — "the market value of all the capital stock" of a corporation less certain deductions. Those decisions, however, remain applicable to the statute as changed. The "aggregate market value of all the shares," in the phrase used in the *Hamilton Manuf. Co.* case (page 302), remains the basis for the corporate franchise tax or excise, or, as was said in that case (page 304),

the tax is based on "the aggregate value of the shares ascertained by the price paid in the market for the shares when sold as the separate property of the stockholders." See also the *Lowell Gas Light Co.* case, page 76, and the *Cary Improvement Co.* case, page 22. The board rightly relied on the authority of these two cases, notwithstanding the change in the language of the statute.

The question for determination, therefore, is narrowed to the question whether, in determining the "true market value" of the shares of the taxpayer in the hands of its shareholders, the board upon this issue was in error in ruling or finding that "Evidence that the intrinsic value of the assets and property of the corporation is in excess of the market value of all the shares is not material." It is unnecessary to discuss generally the meaning of "true market value" or its more familiar counterpart "fair market value." As applied to the present case the language in the *Hamilton Manuf. Co.* case, page 302, remains pertinent: "The market value of the shares of a corporation, or the aggregate market value of all the shares, by which we understand the cash price for which the shares will sell in the market, does not necessarily indicate the actual value or amount of property which a corporation may own. The price for which all the shares would sell may greatly exceed the aggregate of the corporate property, or it may fall very far short of it. Undoubtedly the amount of property belonging to a corporation is one of the considerations which enters into the market value of its shares; but such market value also embraces other essential elements." See also the *Lowell Gas Light Co.* case, page 76. And, as was said in the *Cary Improvement Co.* case (page 22), "the property held by a corporation does not furnish a proper measure of the value of its capital stock regarded as a franchise. The market value of corporate stock must be determined like the market value of any other commodity, by the price that it commands upon actual sales." In view of the findings of the board as to actual sales, it is unnecessary to discuss the situations where there is no such sale or where sales are made under unusual conditions.

The "intrinsic value of the assets and property of the corporation" would be material only in its bearing upon the exchange value of the shares in the hands of the shareholders. And that value "depends on the opinion of the public of possible buyers, or of that part of it which will pay the most. If in their opinion the stock is worth only . . . [a certain amount], — if that is all that the stock will sell for, — it is vain to show that the net value of the property of the corporation, that is to say, the opinion of the public about a chief component element of the value of the stock, if uncontrolled, logically leads to a different value for the stock." *National Bank of Commerce* v. *New Bedford,* 155 Mass. 313, 315. In *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 262–263, as in the earlier case of the same name, the exchange value of certain bank shares was involved, and this court said that there "was sufficient evidence upon which to form an opinion of the selling price . . . without the need of resorting to such indirect methods of getting at it [that is, a resort to the excess of assets over liabilities], and therefore the attempt to divert the inquiry into a wrong channel was met properly enough by a rejection of the evidence." This language is applicable to the present case.

The board did not rule as matter of law that evidence of "the intrinsic value of the assets and property" of a corporation was never material in determining, for the purpose of the corporate franchise tax or excise, the "fair cash value of all the shares" constituting the capital stock of a corporation, or the "true market value" of its shares. Doubtless such evidence would be material in some cases, possibly in many cases. The requirement by G. L. (Ter. Ed.) c. 63, § 53, Second, Third (see St. 1914, c. 198, § 6), of inclusion in the return of a corporation of statements of its assets, liabilities, and profit and loss, does not import that in every case the facts so stated are material in determining the "true value of its corporate franchise." Such facts are thus rendered available when material. The board in this case merely decided that, upon the facts found by it, evidence of "the intrinsic value of the assets and property" of the

taxpayer was immaterial, implying that, in view of its findings with respect to actual sales of shares of stock in the taxpayer, there was "sufficient evidence upon which to form an opinion of the selling price" of such shares without resort to such indirect evidence as the "intrinsic value of the assets and property" of the taxpayer. Whether the decision is to be regarded as a finding or as a ruling, it was not erroneous as matter of law upon the facts found.

*Abatement granted in the amount of*
*$396,682.20 with costs.*